**Curtis L. WRENN, Plaintiff,**

v.

**NEW YORK STATE OFFICE OF MENTAL HEALTH and Peggy O'Neill, Defendants.**

**No. 82 Civ. 3606 (CES).**

United States District Court, S.D. New York.

July 19, 1991.

---

Curtis Wrenn, pro se.

Atty. Gen., of State of New York, Charles Sanders, Asst. Atty. Gen., New York City, for defendants.

## MEMORANDUM DECISION

STEWART, District Judge:

Plaintiff Curtis L. Wrenn (Wrenn), brings this action pursuant to 42 U.S.C. sections 2000e *et. seq.* ("Title VII") and sections 1981 and 1983, alleging that defendants New York State Office of Mental Health ("OMH") and Peggy O'Neill ("O'Neill") denied him an appointment as Director for Administration at Pilgrim Psychiatric Center ("Pilgrim") solely on the basis of his race. Wrenn seeks legal and equitable relief including appointment to the position, back pay, attorney's fees and costs. Defendants move for a directed verdict or in the alternative a judgment in their favor.

A non-jury trial was held on December 11 and 12, 1990. The following constitutes our findings of fact and conclusions of law as mandated by Rule 52 of the Federal Rules of Civil Procedure.

## FACTS

In 1981 Wrenn, a black male, applied for the position of Director for Administration

at Pilgrim.[1]  Tr. 69–70.  In response to a newspaper ad Wrenn submitted his resume which listed his educational background, employment experience and professional affiliations.  *Id.;*  Deft's Exh. A;  Pltf's Exh. 3.[2]  Wrenn was interviewed for the position in February, 1981 by the OMH Pilgrim search committee.  Tr. 25, 69–79.

The OMH Pilgrim search committee (the "committee") was established by the facility to assist in the selection of a candidate for the position of Director for Administration.  The committee was comprised of various employees at Pilgrim in an effort to represent the various factions that would be interacting with the Director for Administration.  The committee asked all applicants questions designed to select candidates best suited to become part of Pilgrim's management team.  Tr. 63–69, 72–73.  Issues of particular importance to the committee included vacancies in key support positions at Pilgrim and the general unrest of the medical staff.  Tr. 72–73, 107–08, 199–202.  Pilgrim needed to stabilize their operations before their accreditation review which was scheduled for that year.  *Id.*  These concerns helped to shape the search committee's interviews and subsequent recommendations of candidates.  *Id.*

The committee was not impressed with Wrenn during his interview.[3]  Wrenn's responses to certain questions were considered by the committee as inappropriate and inconsistent with the administrative approach Pilgrim was seeking.[4]  Tr. 73–74, 79, 116–118, 187, 212–14.  However, because Wrenn was a minority candidate who appeared to possess good credentials, the committee hesitated in dismissing his application.[5]  Tr. 79–81, 187–88.  Therefore, on the same day as Wren's interview, a phone call was made to check further into his background.  *Id.*

O'Neill contacted Joy Holland, a former Director of Nursing at Pilgrim.  Ms. Holland had worked for the Joint Commission for Accreditation of Hospitals ("Joint Commission") and was a deputy commissioner with the State of Ohio's Department of Mental Health.  Tr. 81, 136–38, 188–91, 214–15, 220.  O'Neill believed that Ms. Holland might know of Wrenn because the Toledo Mental Health Center ("TMHC") was recently accredited by the Joint Commission.  Wrenn had represented to the committee that he was the Chief Executive Officer of that hospital.  Moreover, the Ohio Department of Mental Health regulated and operated TMHC.  As a deputy commissioner of that agency, Ms. Holland would know or at least have access to information concerning Wrenn.  Tr. 81, 136–38, 168, 188–91, 214–15, 220.

Ms. Holland informed O'Neill that Wrenn was suspended from his position at TMHC in December, 1980.  *Id.*  The revelation

---

**1.**  Pilgrim is a state psychiatric facility located in Brentwood New York and is part of OMH.  Tr. 195–99.

**2.**  All references to exhibits are to those exhibits which were admitted at trial.  Numbering of exhibits are as they were marked at trial.  Only the exhibits which were admitted at trial are considered, exhibits submitted with post trial briefs which were not admitted at trial are ignored.

**3.**  At trial Anne Francese, Associate Personnel Administrator at Pilgrim and member of the search committee, testified that the committee considered the responses given by Wrenn during the interview as "arrogant, hostile and combative."  She stated, "We didn't get a sense of a person who would come in and attempt to support the staffs, and one of the key functions of the Director for Administration is to provide support, and he did not present himself as that kind of candidate."  Tr. 74, 75.

**4.**  During the interview Wrenn was questioned about interacting with the medical staff.  He stated that at his hospital the doctors were all lazy and that they all thought they were over-worked and underpaid.  In response to questions about staffing shortages after a hiring freeze and recruitment difficulties, Wrenn stated that in his experience most departments were over-staffed and therefore he would probably cut staffing even further.  In light of the problems Pilgrim was facing, the committee found these responses to be particularly unacceptable.  Tr. 73–76, 213.

**5.**  The committee interviewed twelve candidates for the Director for Administration position.  Of the twelve candidates interviewed two were minorities, including Wrenn.  Tr. 66, 90, 150–51; Deft's Exh. L, Q.

that Wrenn was suspended furthered the negative impression Wrenn had already made upon the committee because Wrenn had represented both in his resume and during his interview that he was currently employed at TMHC.[6] *Id.* Therefore, the committee decided to no longer consider Wrenn for the position of Director for Administration at Pilgrim. Tr. 82, 140–42, 191–92, 194.

Pilgrim selected Robert Begnoche as Director for Administration, a white male already employed by OMH. Mr. Begnoche met the qualifications required for the position and was chosen based upon his experience and background. Tr. 66, 90–93, 152–55, 157–60, 209–11, 228–29; Deft's Exh. L, Q; Pltf's Exh. 3, 4. Wrenn was informed by letter dated March 2, 1981 that he was not selected for the position.[7] Pltf's Exh. 1. Subsequently, Wrenn filed charges with the New York State Division of Human Rights and the United States Equal Opportunity Commission ("EEOC") claiming that defendants discriminated against him on the basis of race by not choosing him for the position. Tr. 82, 94–94; Pltf's Exh. 2; Deft's Exh. G. EEOC dismissed Wrenn's charges against defendants and issued a right to sue letter. Tr. 94–96.

In 1982 Pilgrim received notification of Wrenn's intent to sue Pilgrim for failing to offer him the position. Tr. 86. At this time Pilgrim recognized a need to complete their personnel file on Wrenn.[8] Tr. 86–89, 145–46, 167, 169–70, 193–94, 219–20, 222, 224. Pilgrim sent a written reference check to TMHC in order to complete the file and confirm the information obtained during the prior telephone reference check.[9] *Id.* The written reference check confirmed that Wrenn had been terminated from his position as Chief Executive Officer at TMHC prior to applying for the position at Pilgrim and therefore he had misrepresented his employment status in both his resume and at the interview. *Id.*

Wrenn commenced this action in 1982 pursuant to Titles VI and VII of the Civil Rights Act of 1964 and 42 U.S.C. sections 1981, 1983 and 1985, claiming that the original defendants, OMH, James Prevost, and O'Neill, individually and in her official capacity as Director of Pilgrim, discriminated against him on the basis of his race by not selecting him for the vacant position of Director for Administration at Pilgrim. Wrenn also claimed that by conducting the 1982 written reference check defendants retaliated against him for having previously filed EEOC charges against OMH.

Defendants moved for summary judgment in August of 1985 and again in November of 1986. On May 14, 1987, we granted summary judgment in favor of all named defendants on all claims except the Title VII and sections 1981 and 1983 claims against OMH and O'Neill. Defendants motioned for reargument. By memorandum endorsement dated June 11, 1987, we further dismissed Wrenn's sections 1981 and 1983 claims against OMH and Wrenn's section 1981 and 1983 claims against O'Neill except the claims for prospective relief.

In October of 1990 Wrenn moved for summary judgment and defendants cross-moved for dismissal of the remaining 42 U.S.C. sections 1981 and 1983 claims for prospective relief against O'Neill and the retaliation claim under Title VII against

---

**6.** Wrenn deliberately failed to correct the misimpression he created. Wrenn's resume, submitted to Pilgrim in January of 1981, clearly indicates his current employment as Chief Executive Officer at TMHC. Clearly, during his interview in February, 1981 the committee assumed Wrenn was still employed at TMHC. The committee questioned Wrenn regarding differences between his "current" position and the position for which he was applying. Wrenn's responses referred to staff and procedures at "his" hospital. Tr. 31–35, 41–43, 73–74, 77–78; Deft's Exh. A.

**7.** An identical letter was sent to all candidates rejected for the position. Tr. 86–89, 167, 169–70, 219–20.

**8.** Although Pilgrim usually requests written references only for candidates offered a particular position, a written reference check on Wrenn was deemed necessary in light of the pending legal action. Tr. 86–89, 167, 169–70, 219–20.

**9.** The written reference check was sent by Anne Francese, Associate Personnel Administrator at Pilgrim pursuant to her duties as personnel officer and without any instruction from defendant O'Neill. Tr. 145–46, 193.

both defendants. By memorandum decision dated December 6, 1990 we denied Wrenn's motion for summary judgment and defendants' motion for dismissal of the sections 1981 and 1983 claims for prospective relief and we granted defendants' motion to dismiss the retaliation claims. Accordingly, the only claims remaining for trial are the Title VII claims against OMH and O'Neill, and equitable claims for prospective relief pursuant to sections 1981 and 1983 against O'Neill in her official capacity.

This action was tried without a jury on December 11 and 12, 1990. At the conclusion of the trial the parties agreed to submit post trial memoranda of law. Wrenn then served counsel for defendants with a copy of a motion for reconsideration of our dismissal of his retaliation claim. On February 13, 1991 we denied the motion for reconsideration.

### DISCUSSION

■ In a Title VII action alleging discriminatory treatment there is a shifting burden of proof. First, plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if plaintiff has proved his prima facie case, then the burden shifts to defendants to articulate some legitimate, nondiscriminatory reason for their action. Finally, if defendants have met their burden, then the burden shifts back to plaintiff. Plaintiff then has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by defendants were not their true reasons but were merely a pretext for discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 1824–1825, 36 L.Ed.2d 668 (1973)); *Smith v. Am. Express Co.*, 853 F.2d 151, 154 (2d Cir.1988);

*accord Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 986, 108 S.Ct. 2777, 2784, 101 L.Ed.2d 827 (1988).

■ To meet his burden of establishing a prima facie case plaintiff must show that he belongs to a racial minority, he applied for an available position for which he was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94; *McDonnell*, 411 U.S. at 802, 93 S.Ct. at 1824. "Establishment of the prima facie case ... creates a presumption that the employer unlawfully discriminated against the employee." *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. A prima facie case "raises an inference of discrimination" because, unless otherwise explained, defendants' action is presumed to be based upon "consideration of impermissible factors." *Id.* (citing *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978)).

■ Defendants' burden "is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected ... for a legitimate, nondiscriminatory reason." *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. Defendants need not show that they were actually motivated by the proffered reasons, but merely need raise a genuine issue of fact as to whether they discriminated against plaintiff.[10] *Id.; see also Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25, 99 S.Ct. 295, 295–96, 58 L.Ed.2d 216 (1978) (to rebut a prima facie case employer need not prove the absence of discriminatory motive but is merely required to articulate some legitimate, nondiscriminatory reason for rejecting the employee). However, defendants must clearly set forth through the introduction of admissible evidence the reasons for rejecting the plaintiff.[11] *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094.

---

10. Defendants burden is merely one of production, the ultimate burden of persuasion always remains with the plaintiff. *Burdine* at 253–55, 101 S.Ct. at 1093–95.

11. Defendants' burden of production serves two functions. It rebuts plaintiff's prima facie case and frames the factual issues with sufficient clarity so that plaintiff will have a full and fair opportunity to demonstrate pretext. *Burdine*, 450 U.S. at 255–56, 101 S.Ct. at 1094–95.

■ If defendants meet their burden of production then the burden shifts back to plaintiff. Plaintiff is now given the opportunity to demonstrate that defendants' proffered reasons were not the true reasons. Plaintiff also has the ultimate burden of persuading the court that he is a victim of intentional discrimination. *Id.* at 256, 101 S.Ct. at 1095. Plaintiff may do this by either persuading the court that defendants were more likely motivated by a discriminatory reason than by the proffered reason or by showing that defendants' proffered explanation is not credible. *Id.; See McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. at 1825–26.

■ Here, Wrenn established his prima facie case. He is a black male, he applied for the position of Director for Administration at Pilgrim, he was qualified for this position, he was rejected, and ultimately the position was filled by a white male.

■ Defendants have met their burden of production. Defendants submitted evidence which demonstrates legitimate, non-discriminatory reasons for rejecting Wrenn. Wrenn misrepresented his employment status, both on his resume and during his interview. The committee considered Wrenn's responses during the interview to be inappropriate and the committee was negatively impressed with his demeanor during the interview.[12] Further, defendants assert that in an effort *not* to disqualify Wrenn as a candidate, a telephone reference check was conducted immediately after his interview. This reference check revealed that Wrenn had been involuntarily terminated from his position at TMHC.

■ Wrenn has not met his ultimate burden of persuasion. We are not persuaded that defendants were more likely motivated by discriminatory reasons than

by the reasons proffered, nor are we persuaded that defendants' proffered reasons are not credible. Indeed, Wrenn admits that he was involuntarily terminated from the position of Chief Executive Officer at TMHC at the time of his interview at Pilgrim. Wrenn also admits withholding this information from his resume and from the committee during his interview. Tr. 31–35, 41–43; Deft's Exh. A. Wrenn presented no evidence which persuades us that defendants' proffered reasons were mere pretext for intentional discrimination.[13] Accordingly, Wrenn's claims under Title VII are dismissed.

■ The same three step analysis used to evaluate the merits of Title VII claims is also used to evaluate claims asserted under sections 1981 and 1983. *See Guillory v. St. Landry Parish Police Jury,* 802 F.2d 822, 824 (5th Cir.1986), *cert. denied,* 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987). Sections 1981 and 1983 provide "[n]o greater or lesser protection against discriminatory practices" than Title VII. *Carrion v. Yeshiva Univ.,* 535 F.2d 722, 729 (2d Cir.1976). Accordingly, Wrenn's remaining claims under 42 U.S.C. sections 1981 and 1983 are also dismissed.

### CONCLUSION

We find that plaintiff Curtis L. Wrenn was not denied the position of Director for Administration at Pilgrim on the basis of race. Plaintiff's complaint is dismissed. The clerk's office shall submit a judgment.

SO ORDERED.

---

**12.** Use of subjective criteria in rejecting plaintiff is not necessarily insufficient to rebut the prima facie case if the subjective criteria is nondiscriminatory and reflects a legitimate business decision. *See Casillas v. U.S. Navy,* 735 F.2d 338, 345 (9th Cir.1984); *McDonnell Douglas,* 411 U.S. at 803, 93 S.Ct. at 1824–25.

**13.** We have considered all arguments raised by Wrenn in his post trial memorandums. We find these arguments unpersuasive at best and not meriting further discussion.