Muyee ALIE, Plaintiff,

v.

**NYNEX CORPORATION and Telesector Resources Group, Inc., Defendants.**

No. 93–CV–2954 (JRB).

United States District Court,
E.D. New York.

Aug. 5, 1994.

Ira Cure, Lewis, Greenwald, Kennedy, Lewis, Clifton & Schwartz, P.C., New York City, for plaintiff.

Richard H. Wagner, Eric R. Alderman, White Plains, NY, for defendants.

## MEMORANDUM–DECISION AND ORDER

BARTELS, District Judge.

The defendant NYNEX Corporation ("NYNEX") moves this Court under Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing plaintiff's first amended complaint (the "Amended Complaint"). Defendant urges that the Amended Complaint fails to allege the requisite elements of the claims asserted under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*), Section 1981 of the Civil Rights Act of 1866 (42 U.S.C. § 1981), the New York State Human Rights Law (N.Y. Executive Law § 296), and the New York City Human Rights Law (New York City Charter and Administrative Code, Title 8, Ch. 1, § 8–101 *et seq.*). NYNEX argues in the alternative that because plaintiff was employed by its subsidiary, defendant Telesector Resources Group, Inc. ("TRG"),[1] plaintiff cannot hold NYNEX liable for any discriminatory acts in which TRG may have engaged. For the reasons set forth below, the Court grants the motion, but also grants plaintiff leave to replead.

## BACKGROUND

Plaintiff Muyee Alie is a native of China who was employed by defendant TRG. TRG is a wholly-owned subsidiary of New York Telephone Company and New England Telephone and Telegraph Company, which in turn are wholly-owned subsidiaries of defendant NYNEX. While at TRG, Alie held the position of Associate Director of the Special Billing Output District ("Special Billing"). That position conferred upon her the responsibility to oversee the development of an invoice billing system. Plaintiff alleges that during most of her tenure as Associate Director of Special Billing, she served as an important member of the team working on the invoice billing project, and was included in all staff and client meetings. (Amended Complaint, ¶ 10.)

The Amended Complaint alleges that despite plaintiff's superior performance as Associate Director, the nature of her position

changed dramatically when, in March of 1989, TRG assigned Irma Lauter to head Special Billing. At this time, Lauter became plaintiff's immediate supervisor. Plaintiff Alie asserts that Lauter intentionally excluded her from meetings at which she previously would have played an integral role, and replaced her with less experienced and less knowledgeable white employees. (Amended Complaint, ¶ 11.) Alie asserts that she and other minority supervisors routinely were transferred out of Lauter's department, (*id.* at ¶ 13), and that plaintiff herself was targeted for such a transfer despite her superior work performance. (*Id.* at ¶ 14.) Lauter purportedly retained Alie during development of the invoice billing system, but transferred her immediately upon the project's completion. Plaintiff alleges that Lauter engaged in a pattern and practice of transferring minority supervisors out of her department, and in fact retained on the billing project team a white male employee about whom a customer, MCI, specifically had complained. (*Id.* at ¶ 12.)

The core of plaintiff's discrimination claim lies in defendants' failure to credit her with an Extra Merit Award ("EMA") for her participation in the development of the invoice billing system. Alie contends that upon conclusion of the billing project, each team member responsible for development of the system, except plaintiff, received an EMA. (Amended Complaint, ¶ 16.) She asserts that defendants intentionally withheld the EMA from her solely on the basis of her race, color, and national origin, and that the wrongful denial of the EMA ultimately led to her discharge, on or about December 11, 1992, during a workforce reduction. (*Id.* at ¶¶ 17, 7.) Although TRG allegedly utilized a set of "neutral criteria" to determine which employees would be discharged, plaintiff claims that TRG's partial reliance on whether an employee had received an EMA had the effect of discriminating against her on the basis of her race. (*Id.* at ¶¶ 17–21.) Plaintiff now seeks reinstatement to her former position with defendant TRG.

---

1. TRG has not joined in the present motion.

*DISCUSSION*

■ The court's function on a motion to dismiss "is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 Int'l Bhd. of Elec. Workers,* 905 F.2d 35, 37 (2d Cir.1990). Thus, the relevant inquiry is not whether the plaintiff ultimately will prevail, but whether she is entitled to offer evidence in support of her claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Unless the movant successfully persuades the court "beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," the motion to dismiss must be denied. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). *Accord Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991); *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir. 1991). The court must apply this standard with particular strictness where, as here, the complaint alleges a violation of plaintiff's civil rights. *Branum,* 927 F.2d at 705 (and cases cited therein).

■ In determining the legal sufficiency of a pleading under Rule 12(b)(6), the court limits its review to the facts stated on the face of the complaint, *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991), viewing these allegations as true and according the plaintiff the benefit of all reasonable inferences that may drawn therefrom. *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986); *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Initially, the Court notes that it will not consider on the present motion the affidavit and attached exhibits submitted by plaintiff in support of her claim that NYNEX may be held liable for the discriminatory acts in which TRG allegedly engaged. When a party submits evidence outside the pleadings in response to a motion to dismiss, the court has discretion to " 'exclude the additional material and decide the motion on the complaint alone.' " *Kopec v. Coughlin,* 922 F.2d 152, 154 (2d Cir.1991) (quoting *Fonte v. Board of Manag-*

*ers of Continental Towers Condominium,* 848 F.2d 24, 25 [2d Cir.1988] ). Because defendant never filed any extra-pleading material in response, and consideration of the exhibits offered by plaintiff does not greatly facilitate disposition of the present motion, the Court limits its review to the allegations of the Amended Complaint, and declines to convert this motion to one for summary judgment.

A. *Legal Sufficiency of Plaintiff's Employment Discrimination Claims*

■ In order to survive a motion to dismiss, a complaint asserting a civil rights violation "must make specific factual allegations indicating a deprivation of rights." *Fonte,* 848 F.2d at 25. The law of this Circuit is clear that a "complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a Court could find a violation of the Civil Rights Acts, fails to state a claim under 12(b)(6)." *Martin v. New York State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978). The Amended Complaint falls short of this pleading threshold.

■ Title VII prohibits the discrimination against any individual with respect to the "terms and conditions of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). *See also Wards Cove Packing Co., Inc. v. Atonio,* 490 U.S. 642, 645, 109 S.Ct. 2115, 2118, 104 L.Ed.2d 733 (1989); *Fernandez v. United States Postal Service,* 804 F.Supp. 448, 450 (E.D.N.Y.1992). Section 1981 prohibits racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). When asserted as a companion remedy to redress employment discrimination, the same analysis used to evaluate the sufficiency of a claim asserted under Title VII is applied to a Section 1981 claim. *Wrenn v. New York State Office of Mental Health,* 771 F.Supp. 594, 599 (S.D.N.Y.1991), *aff'd without op.,* 962 F.2d 1 (2d Cir.1992). *See also Carrion v. Yeshiva Univ.,* 535 F.2d 722, 729 (2d Cir.1976); *Duncan v. AT & T*

*Communications, Inc.,* 668 F.Supp. 232, 235 n. 4 (S.D.N.Y.1987). These standards also apply with equal force to employment discrimination claims arising under the New York Executive Law and the New York City Charter and Administrative Code.[2] *See, e.g., Song v. Ives Laboratories, Inc.,* 957 F.2d 1041, 1046 (2d Cir.1992); *Strauss v. Microsoft Corp.,* 814 F.Supp. 1186, 1190 n. 5 (S.D.N.Y.1993); *Miller Brewing Co. v. State Div. of Human Rights,* 66 N.Y.2d 937, 938–39, 498 N.Y.S.2d 776, 777–78, 489 N.E.2d 745, 746–47 (1985); *Pace College v. Commission on Human Rights,* 38 N.Y.2d 28, 33, 377 N.Y.S.2d 471, 474, 339 N.E.2d 880, 881 (1975).

To state a legally sufficient claim of employment discrimination, plaintiff must allege that she: (1) is a member of a protected class; (2) was qualified for a particular position; (3) was denied a privilege of her employment and ultimately was discharged from that position; and (4) was discharged under circumstances giving rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Rosen v. Thornburgh,* 928 F.2d 528, 532 (2d Cir.1991). Although the plaintiff's burden of demonstrating "a *prima facie* case of disparate treatment is not onerous," *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981), the plaintiff must set forth specific factual allegations establishing a *prima facie* case. *Fonte,* 848 F.2d at 25.

The Amended Complaint easily satisfies the first three pleading requirements. Plaintiff Alie states clearly that she is a native of China and a member of the Asian race, and thus belongs to a protected class. The pleading also sets forth factual allegations detailing Alie's qualifications for the position of Associate Director, satisfying the second element of plaintiff's discrimination claim. For example, the Amended Complaint illustrates plaintiff's history of success at TRG and in the capacity of Associate Director of Special Billing, describing how she "served as an integral part of a team negotiating with MCI," and always "was included in all meetings whether internal to NYNEX or with such major clients as MCI and AT & T." (Amended Complaint, ¶ 10.) Although the Amended Complaint is not a model of specificity, the Court cannot say that it is wholly devoid of facts supporting the assertion that Alie was qualified for the position she held while in TRG's employ. Furthermore, the Amended Complaint adequately pleads the third element of the claim for employment discrimination, in that it succinctly sets forth the fact that plaintiff was denied a privilege of employment. Alie alleges that she was the only member of the invoice billing system team not awarded an EMA, and that her lack of an EMA ultimately led to her discharge during the 1992 workforce reduction. (*Id.* at ¶¶ 16, 20, 21.)

Deficiencies in the pleading become apparent, however, when one undertakes an analysis of the fourth element of Alie's employment discrimination claim. Viewing the facts in the light most favorable to plaintiff and according her the benefit of all reasonable inferences, the Court finds that the Amended Complaint fails to plead that plaintiff was discharged under circumstances giving rise to an inference of discrimination. For example, Alie avers that her supervisor, Irma Lauter, engaged in an ongoing pattern and practice of racial discrimination whereby minority supervisors routinely were transferred out of Lauter's department. (Amended Complaint, ¶ 13.) However, plaintiff neither identifies these minority supervisors, nor details the events surrounding their alleged

**2.** Section 296 of the New York Executive Law states that it shall be an unlawful discriminatory practice "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." Section 8–107 of Title 8 of the New York City Charter and Administrative Code tracks this language, and prohibits employers from engaging in the same discriminatory activities. Courts view the two statutes as comparable. *Pace College v. Commission on Human Rights,* 38 N.Y.2d 28, 33, 377 N.Y.S.2d 471, 474, 339 N.E.2d 880, 881 (1975); *Western Union Int'l, Inc. v. Commission on Human Rights,* 128 Misc.2d 217, 220, 489 N.Y.S.2d 665, 668 (Sup. Ct.N.Y.Co.1985).

discriminatory transfers. Similarly, Alie's general allegation that Lauter intentionally prevented her from attending meetings and replaced her at such meetings with "less knowledgeable white subordinates" (*id.* at ¶ 11), falls short of satisfying the specificity criteria set forth in *McDonnell Douglas.* Alie neither pleads the dates of any meetings from which Lauter excluded her, nor identifies one specific white employee who took her place at any such meeting. The omission of facts upon which plaintiff's charge of racially motivated discrimination could rest manifests itself most clearly in the vague, conclusory allegation proffered in support of Alie's assertion that the decision not to award an EMA was the result of racial animus: Plaintiff states only that defendants "denied [her] this EMA because of her race, color, and national origin." (*Id.* at ¶ 17.) The conclusory nature of this statement exemplifies precisely the type of allegation that fails to satisfy the minimum pleading requirements applicable to claims arising under Title VII and the Civil Rights Acts.

Although the Court holds that the allegations of the Amended Complaint are deficient in their present state, the Court is of the opinion that plaintiff should be granted leave to amend. Where the court grants a dismissal for failure to meet minimum pleading requirements, "such a dismissal ordinarily should be accompanied by leave to file an amended complaint." *Branum,* 927 F.2d at 705; *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988). Greater specificity regarding the motivating factor behind the decision not to award plaintiff an EMA, the names of minority supervisors affected by defendants' purported discriminatory practices, the dates upon which these supervisors allegedly were transferred, the identities of the "less knowledgeable white subordinates," and the particular meetings attended by these individuals and from which plaintiff was excluded could transform the Amended Complaint into one which makes a more-than-adequate showing of racially motivated

employment practices. Accordingly, plaintiff should be given the opportunity to supplement her claims.

### B. *Defendant NYNEX's Status as an "Employer" for Purposes of Plaintiff's Discrimination Claims*

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* prohibits covered employers from engaging in discriminatory employment practices.[3] Section 2000e(b) defines "employer" as any "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." Defendant NYNEX does not dispute that it falls squarely within the statutory definition of "employer." Yet, it remains unclear whether NYNEX can be held liable as *plaintiff's* employer for Title VII purposes. Defendants concede that TRG employed plaintiff and that NYNEX is the ultimate corporate parent of TRG. NYNEX denies, however, that it may be deemed plaintiff's employer simply by virtue of this corporate relationship.

The law is clear that an individual may be the employee of more than one "employer" for Title VII purposes, *Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 611 F.Supp. 344, 349 (S.D.N.Y.1984), and that the term "employer" as used in Title VII is to be construed liberally. *See Bostick v. Rappleyea,* 629 F.Supp. 1328, 1334 (N.D.N.Y. 1985), *aff'd without op.,* 907 F.2d 144 (2d Cir.1990). In keeping with a liberal construction, the courts of this Circuit have held that the absence of a direct employment relationship does *not* bar a Title VII claim, and that liability extends beyond conventional single-employer situations. *Spirt v. Teachers Ins. & Annuity Ass'n,* 691 F.2d 1054, 1063 (2d Cir.1982), *vacated on other grounds,* 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983); *Matthews v. New York Life Ins. Co.,* 780 F.Supp. 1019, 1023

---

**3.** The Court here addresses jointly the issue of whether NYNEX properly can be named as a defendant for purposes of plaintiff's two federal claims. When used as a companion remedy in an employment discrimination action, the same standards and analysis used to evaluate a Title VII claim are applied to one asserted under Section 1981. *See Wrenn,* 771 F.Supp. at 599; *Duncan,* 668 F.Supp. at 235 n. 4.

(S.D.N.Y.1992); *Amarnare,* 611 F.Supp. at 347. *Cf. New York v. Holiday Inns, Inc.,* Nos. 83–564S, 86–103S, 1993 WL 30933, *6, 1993 U.S. Dist. LEXIS 1301 at *20 (W.D.N.Y. January 28, 1993).

■■■ In gauging the reach of Title VII liability, the courts generally look to the economic relationship between related corporations and measure the degree of control each exercises over policy-making and the means and manner of an employee's work performance. Thus, it is "where several parties have an integrated economic relationship and exercise common control over employment practices," that they may be held liable for "each other's discriminatory acts or policies as an integrated enterprise." *Streeter v. Joint Industry Bd. of Elec. Industry,* 767 F.Supp. 520, 527 (S.D.N.Y.1991). *See also Goyette v. DCA Advertising, Inc.,* 830 F.Supp. 737, 744 (S.D.N.Y.1993); *Kelber v. Forest Elec. Corp.,* 799 F.Supp. 326, 331 (S.D.N.Y.1992). Under this formulation, a parent corporation that interferes with its subsidiary's employment policies may be deemed an "employer" within the meaning of Title VII.

■■■ For purposes of plaintiff's state and city causes of action,[4] the New York State Human Rights Law defines a covered employer as any employer with four or more persons in his employ. N.Y. Executive Law § 292(5) (McKinney's 1993). NYNEX undeniably meets this statutory threshold. However, as the Court noted with regard to plaintiff's federal claims, an issue remains concerning whether NYNEX may be deemed *plaintiff's* employer within the meaning of the Human Rights Law. In making this determination, the Court must consider the following elements:

1) whether the proposed employer had the power of the selection and engagement of the employee; 2) whether the proposed employer made the payment of salary or wages to the employee; 3) whether the proposed employer had the power of dismissal over the employee; and 4) whether

the proposed employer had the power to control the employee's conduct.

*Goyette,* 830 F.Supp. at 746 (citing *State Div. of Human Rights v. GTE Corp.,* 109 A.D.2d 1082, 1083, 487 N.Y.S.2d 234, 235 [4th Dep't 1985] ). Whether the alleged employer exercised control over the employee's conduct and the incidents of his employment remains the most important consideration in this analysis. *In re Villa Maria Institute of Music v. Ross,* 54 N.Y.2d 691, 692, 442 N.Y.S.2d 972, 973, 426 N.E.2d 466, 467 (1981); *Germakian v. Kenny Int'l Corp.,* 151 A.D.2d 342, 343, 543 N.Y.S.2d 66, 67 (1st Dep't 1989); *GTE Corp.,* 109 A.D.2d at 1083, 487 N.Y.S.2d at 235.

■■■ The question thus becomes one of whether plaintiff adequately has alleged that NYNEX and TRG enjoy an integrated economic relationship and whether NYNEX exercises the requisite control over her work environment and TRG's employment policies. The plaintiff has alleged only that "Telesector Resources Group, Inc. and NYNEX Corporation have a substantial identity of interest for purposes of Title VII." (Amended Complaint, ¶ 6.) The Amended Complaint neglects to substantiate this allegation, and otherwise is devoid of any factual basis upon which to determine the economic relationship between the corporate defendants and the degree of control exerted by NYNEX over plaintiff's working conditions, TRG's employment policies and practices, and the decision not to award plaintiff an EMA.

■■■ The paucity of factual allegations detailing the relationship between defendants NYNEX and TRG is fatal to plaintiff's claims against NYNEX. Although plaintiff thus far has conducted little or no discovery on the issue of whether NYNEX properly can be deemed her "employer," plaintiff's vague, conclusory allegation of corporate identity of interest is wholly insufficient to withstand NYNEX's motion to dismiss. However, the Court believes it proper to accord plaintiff the opportunity to supplement these allega-

---

**4.** Again, the Court here treats jointly the issue of whether NYNEX can be named as a defendant in the causes of action asserted under the state and city Human Rights Laws, as courts generally view the two statutes as comparable. *Pace College,* 38 N.Y.2d at 33, 377 N.Y.S.2d at 474, 339 N.E.2d at 881; *Western Union Int'l, Inc.,* 128 Misc.2d at 220, 489 N.Y.S.2d at 668.

tions and correct these deficiencies in a second amended complaint.

### CONCLUSION

For the reasons set forth above, the motion to dismiss the first amended complaint in its entirety for failure to state a claim and the motion to dismiss the first amended complaint insofar as it asserts liability against defendant NYNEX hereby are GRANTED. Further, plaintiff hereby is GRANTED leave to file a second amended complaint within thirty (30) days of the date of this order.

SO ORDERED.