Seymour **BERG**, Plaintiff,

v.

**EMPIRE BLUE CROSS AND BLUE SHIELD**, Defendant.

No. 98 CV 6020 DRH.

United States District Court, E.D. New York.

July 14, 2000.

---

Stuart R. Berg, Garden City, NY, for plaintiff.

Seyfarth, Shaw, Fairweather & Geraldson, New York City, by Gary H. Glaser, Craig P. Pacernick, for defendant Empire Blue Cross and Blue Shield.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

Pending before the Court is the motion of Defendant Empire Blue Cross and Blue Shield ("Empire" or "Defendant") to dismiss the Complaint for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff commenced employment with Empire in 1971. (Compl.¶ 10.) The Complaint alleges that as an employee, Plaintiff was covered under Empire's life insurance policy and that during the course of his employment, Empire made certain representations to Plaintiff regarding the amount of his life insurance benefits. (*Id.* ¶¶ 12–13.) More specifically, Plaintiff alleges that Empire represented that the face amount of his life insurance policy— which just prior to his retirement was $94,000.00—would be reduced by 10% on June 15, 1991, the date of his retirement, and would be further reduced in increments of 10% on each June 15th thereafter until it reached $47,000, where it would remain constant for life. (*Id.* ¶¶ 13–14.)

Pursuant to Empire's representations, Plaintiff's life insurance benefits had been reduced to $47,000 by June 15, 1995. (*Id.* at 15.) By letter dated June 14, 1998, however, Empire advised Plaintiff that, effective January 1, 1999, his life insurance coverage would be reduced from

$47,000.00 to 7,500.00. (*Id.* ¶ 17.) Although Plaintiff objected to this "unilateral" reduction of his benefits, (*see id.* ¶ 18), Empire refused to reverse its decision. (*Id.* ¶ 19.)

On September 14, 1998, Plaintiff commenced an action in Nassau County Supreme Court. In his original complaint, Plaintiff asserted claims for breach of contract, estoppel, injunctive relief, and attorney's fees. On September 29, 1998, Empire removed the action to this Court, pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, on the ground that Plaintiff's state law claims relate to an employee welfare benefit plan and thus were preempted under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Thereafter, Plaintiff moved to have the action remanded. By Memorandum and Order dated May 19, 1999, the Court denied Plaintiff's motion and held that Plaintiff's claims were preempted by ERISA.

Plaintiff filed a new "Verified Complaint" (the "Complaint") on June 29, 1999, asserting claims for ERISA,[1] breach of contract, equitable estoppel and attorney's fees based upon Empire's alleged illegal decision to unilaterally reduce his benefits. (*Id.* ¶ 20.) Annexed to the Complaint as Exhibit A are the "applicable parts" of the Summary Plan Description ("SPD") contained in Empire's employee handbook, (*id.* ¶ 12), to wit, pages 35–37, which describe Empire's Group Life Insurance Plan (the "Plan") under which the present suit has been brought. Specifically, Plaintiff relies on page 36 of the SPD which provides that upon retirement, an employee's "basic life insurance will be reduced by 10% as of [his or her] retirement date, and by an equal amount on each of the next four anniversaries of your retirement date so that *50% of your life insurance coverage remains in force for the rest of*

*your life, at no cost to you."* (*Id.* Ex. A at 36 (emphasis added).)

In support of its motion, Empire has submitted the complete SPD for the Court's review. (Affirmation of Gary H. Glaser, sworn to July 22, 1999 ("Glaser Aff."), Ex. 3.) Page 42 of the SPD states that "[o]ther important information about your Group Life Insurance Plan and its administration can be found in the section entitled 'Benefit Administration.'" (Glaser Aff., Ex. 3 at 42.) The Benefit Administration section of the SPD, located on page 68, provides that Empire "expects and intends to continue the Plans in your Benefits Program indefinitely, but reserves its right to end each of the Plans, if necessary. [Empire] also reserves its right to amend each of the Plans at any time." (*Id.* at 68.) Based on these provisions, Empire argues that it had an unqualified right to reduce Plaintiff's benefits at any time.

## DISCUSSION

I. *Rule 12(b)(6)*

A. *Standard of Review*

The standards employed by the Court when deciding a motion to dismiss under Rule 12(b)(6) are well established. In reviewing a complaint for legal sufficiency, dismissal is appropriate only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). In making this determination, a court looks solely to the fact of the complaint, *see Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991), accepting as true all well-pleaded factual allegations, *see DeJesus v. Sears, Roebuck*

---

1. The first cause of action alleges violations of "State and Federal laws," without identifying which laws Plaintiff is referring to. (Compl.¶ 20.) However, given that the Court has already held that Plaintiff's claims are preempted by federal law under ERISA, the Court will treat Plaintiff's federal claims as asserting ERISA violations.

& Co., 87 F.3d 65, 69 (2d Cir.1996), and viewing such allegations, as well as all reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *Harsco Corp., v. Segui,* 91 F.3d 337, 341 (2d Cir.1996); *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996).

The Court of Appeals for the Second Circuit has emphasized that the district court's role when ruling on a motion to dismiss for failure to state a claim is "merely to assess the legal feasibility of the complaint," and not to engage in a weighing of the evidence. *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980). "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." *Gant v. Wallingford Bd. Of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (citation and internal quotations omitted). Nevertheless, "[w]hile the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." *Leeds,* 85 F.3d at 53.

B. *The Court will Consider the Entire SPD*

■ Although a court in deciding a Rule 12(b)(6) motion is generally limited to considering the facts alleged in the complaint, a district court may also consider documents attached to the complaint or incorporated in it by reference. *See, e.g., Stuto v. Fleishman,* 164 F.3d 820, 826 n. 1 (2d Cir.1999). In addition, a court may also consider documents outside the pleadings if they are "integral" to the complaint and upon which the complaint relies. *See International Audiotext Network, Inc. v. American Tel. and Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) ("Although the amended complaint in this case does not incorporate the Agreement, it relies heavily upon its terms and effect; therefore, the Agreement is 'integral' to the complaint, and we consider its terms in deciding whether [plaintiff] can prove any set of facts that would entitle it to relief."). Courts apply this exception where, as here, a plaintiff sues primarily on the basis of a document, such as a contract, and only attaches selected portions of that document, or fails to attach the document at all. *See id.; see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991) ("In addition, we have held that when a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce the prospectus when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure.") (citing *I. Meyer Pincus and Assocs. v. Oppenheimer & Co.,* 936 F.2d 759, 762 (2d Cir.1991)).

Accordingly, in deciding Defendant's motion under Rule 12(b)(6), the Court will consider the entire SPD and will not limit its review to the selected portions submitted by Plaintiff.[2]

II. *Plaintiff's ERISA Claim Survives Defendant's Motion*

■ There are two distinct types of employee benefit plans under ERISA— pension plans and welfare plans. *See* 29 U.S.C.A. § 1002(1) & (2)(A). Because Empire's plan involves life insurance, it is classified as a welfare plan. *See id.* § 1002(1); *see also* Memorandum and Order dated May 19, 1999 at 5–6.

■ "Unlike pension plan benefits, the benefits provided by a welfare plan

2. Plaintiff argues that at the time he commenced employment with Empire, the Plan in effect did not contain a reservation of rights clause. Empire concedes as much but counters that the clause was included in a later contract which governs the instant dispute.

Because the Court holds that Plaintiff's ERISA claim passes Rule 12(b)(6) muster even if the Plan contained a reservation of rights clause, the Court need not address this issue.

generally are not vested and an employer can amend or terminate a welfare plan at any time." *American Fed'n of Grain Millers, AFL—CIO v. International Multifoods Corp.*, 116 F.3d 976, 979 (2d Cir. 1997) (citations omitted). The reason for this rule is that " 'the costs of such plans are subject to fluctuating and unpredictable variables.' " *Id.* (quoting *Moore v. Metropolitan Life Ins.*, 856 F.2d 488, 492 (2d Cir.1988)). Because the same may be said for welfare plans that provide benefits to retirees, "retiree welfare benefits are generally not vested, and an employer can amend or terminate a plan providing such benefits at any time." *Id.*

 Although there is no automatic vesting of benefits under an ERISA welfare plan, "if an employer promises vested benefits, that promise will be enforced." *Id.* at 980 (citations omitted). In determining whether an employer promised vested benefits, courts will look to the plan documents. *See Joyce v. Curtiss–Wright Corp.*, 171 F.3d 130, 133 (2d Cir.1999). "All courts agree that if a document unambiguously indicates whether retiree medical benefits are vested, the unambiguous language should be enforced." *American Fed'n of Grain Millers*, 116 F.3d at 980. Where plan documents are ambiguous, however, the Second Circuit has instructed that, to reach a trier of fact, "an employee does not have to 'point to unambiguous language to support [a] claim. It is enough [to] point to written language capable of reasonably being interpreted as creating a promise on the part of [the employer] to vest [the recipient's] ... benefits.' " *Id.* (quoting *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 78 (2d Cir. 1996)); *see also Joyce*, 171 F.3d at 134 ("[A] single sentence [in plan documents] can suffice to raise a question that requires resolution by a trier of fact.").

 Here, the Plan provides that an employee's "basic life insurance will be reduced by 10% as of [his or her] retirement date, and by an equal amount on each of the next four anniversaries of your retirement date so that *50% of your life insurance coverage remains in force for the rest of your life, at no cost to you.*" (Compl.Ex. A at 36 (emphasis added).) Although this language promises lifetime benefits of 50% of coverage, Empire argues that, because it reserved the right to amend or terminate the Plan, Plaintiff's benefits could not have vested. The Court disagrees. It is well-established that "if an employer has not promised vested benefits in a SPD, and the employer expressly reserves the right to terminate the plan in the SPD, benefits promised in the SPD are not vested." *American Fed'n of Grain Millers*, 116 F.3d at 982. This rule only applies, however, where the plan "could not reasonably be interpreted as promising vested benefits." *Id.* Here, on the other hand, the SPD contains language which could be reasonably interpreted as promising vested retiree benefits, *viz.*, "50% of your life insurance coverage remains in force for the rest of your life, at no cost to you." (Compl.Ex. A at 36.)

This does not end the Court's analysis, however. In *American Fed'n of Grain Millers*, the Second Circuit, noting that the courts are split on this question, expressly left open the issue of whether a general amendment or termination provision in a welfare benefit plan is sufficient in and of itself to supersede plan language promising vested benefits. 116 F.3d at 982–83. In that case, the court held that statements such as "no cost to you" and "plan costs—paid by employer" were insufficient to constitute a promise of vested benefits. *Id.* at 982. Rather, the court found, such statements merely indicated a promise to pay present costs, not a promise to pay costs indefinitely. *Id.* Because the SPD could not "reasonably be interpreted as promising vested benefits," the court stated that it did "not need to decide whether a specific promise of vested benefits can be defeated by a general reservation of the right to amend or terminate a plan." *Id.* at 983.

The Second Circuit revisited this issue in *Joyce*, 171 F.3d 130, where retirees alleged that their employer violated ERISA by terminating their health insurance benefits upon the expiration of their collective bargaining agreement. In that case, the SPD contained a reservation of the right to amend or terminate on behalf of the employer and also provided: "During your retirement, you and your covered dependents will have the same Basic Health Care coverage as you had while active at no cost to you." *Id.* at 136. In addition, separate plan documents warned employees that "[t]he medical benefits plan under which you are now covered is provided to you under the terms of a Collective Bargaining Agreement. Accordingly, termination of the Collective Bargaining Agreement for any reason, shall result in termination of the medical coverage provided by such agreement." *Id.* at 132.

Noting that it "ha[d] not joined those circuits that have adopted the position that 'a general amendment provision in a welfare benefits plan is of itself sufficient to unambiguously negate any inference that the employer intends for employee welfare benefits to vest contractually,'" *id.* at 136 (quoting *Spacek v. Maritime Ass'n*, 134 F.3d 283, 293 (5th Cir.1998) (citing cases in the Third, Fourth, Eighth, Tenth, and Eleventh Circuits)), the court held that the "SPD's reservation of rights clause, *when combined with the [plan's] termination language* ..., precludes any viable claim that the SPD served to vest the retirees' benefits." *Id.* (emphasis added). Thus, although the Second Circuit could have simplified the analysis by stating that the reservation of rights clause was sufficient in itself to bar the employees' claim of vested rights, the court was careful to point out that it was not adopting the rationale espoused by those Circuits that have taken this position. Instead, the court relied in part on the termination language contained in the plan, which provided that the employer "shall" terminate benefits upon the expiration of the collective bargaining agreement. *Id.*

The court also noted that to create an issue of fact as to vesting, a court is required to look to the text itself, and cited to two Seventh Circuit cases where plan language was found to have either promised vesting or created a question of fact on the issue. *Id.* at 136 (citing *Diehl v. Twin Disc, Inc.*, 102 F.3d 301, 306 (7th Cir.1996) (finding vesting based on language that retirees "shall ... be entitled for the lifetime of the pensioner" to receive benefits coverage) and *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 605–08 (7th Cir.1993) (en banc) (Posner, J.) (allowing case to go to jury in part based on written language distributed to each employee stating that "both you and your spouse will be covered for the remainder of your lives")).

■ Given the holdings of *American Fed'n of Grain Millers* and *Joyce,* and given the fact that the Second Circuit has not yet ruled squarely on this issue, the Court holds that the language in the SPD which provides that "50% of your life insurance coverage remains in force for the rest of your life, at no cost to you" could reasonably be interpreted as promising vested retiree benefits and that Empire's general reservation of rights clause contained elsewhere in the SPD is not in and of itself a sufficient bar to overcome such a promise. Although there is no question that in an appropriate case, a reservation of rights clause would be sufficient to carry the day for the employer, that is not the case here. A review of the SPD reveals that what appears to be self-contained language on page 36 of the SPD categorically states that 50% of the employee's coverage "remains in force for the rest of [the employee's] life, at no cost to [the employee]." (Compl.Ex. A at 36.) There is no indication on this page that the employee's coverage is subject to Empire's right to amend or terminate the Plan. Six pages later, however, the SPD provides that "[o]ther important information about your Group Life Insurance Plan and its admin-

istration can be found in the section entitled 'Benefit Administration,'" with no explanation proffered as to what type of information is being referred to. (Glaser Aff., Ex. 3 at 42.) Finally, 26 pages later in another portion of the booklet, there is a reservation of rights clause, whereby Empire reserves its right to amend or end the Plan at any time. (*Id.* at 68.) Given the layout of the language in the SPD, a reasonable juror could infer that Empire promised vested retiree benefits.

This case is distinguishable from *American Fed'n of Grain Millers* in that the plan in that case contained language promising to pay *present* costs at no cost to the employees, *see* 116 F.3d at 982, as opposed to the instant case, where the Plan promises to maintain benefits for the rest of the employees' lives. This case is also distinguishable from the *Joyce* case in that there is no provision in the instant Plan stating that benefits "shall" terminate upon an event that thereafter occurred. *See Joyce,* 171 F.3d at 136 (plan provided that employer "shall" terminate benefits upon the expiration of the collective bargaining agreement). Instead, the instant case is more akin to the Seventh Circuit cases cited in *American Fed'n of Grain Millers* where vesting was found based on similar language promising benefits for the lifetimes of the employees. 171 F.3d at 135 (citing *Diehl,* 102 F.3d at 306 and *Bidlack,* 993 F.2d at 605–08). Accordingly, because the instant Plan contains language that may reasonably be interpreted as creating a promise on Empire's behalf to vest Plaintiff's benefits, and because the Second Circuit has declined to hold that such language may be negated simply by a reservation of rights clause, Empire's motion to dismiss the ERISA claim is denied.[3]

III. *Plaintiff's Claim for Equitable Estoppel is Dismissed*

Plaintiff's third cause of action alleges that Empire should be equitably estopped from reducing Plaintiff's benefits based upon representations made by Empire over Plaintiff's 20 years of employment "that the life insurance benefit was a benefit that [Plaintiff] would enjoy for the rest of his life, at no cost to him." (Compl. ¶ 27.) Plaintiff alleges that he relied upon these representations to his detriment in that he "never sought other life insurance policies based upon his knowledge that [Empires'] life insurance coverage would always be present." (*Id.* ¶ 28.)

It is well-established that "the principles of estoppel can apply in ERISA cases under extraordinary circumstances." *Schonholz,* 87 F.3d at 78 (citing *Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir. 1993)); *see also Bonovich v. Knights of Columbus,* 146 F.3d 57, 63 (2d Cir.1998) ("[W]e confirm that estoppel actions arising under ERISA are properly conducted, in our circuit, under the rules of *Schonholz* and *Lee.*"); *Lee,* 991 F.2d at 1008 ("[W]e implicitly have recognized a cause of action for equitable or promissory estoppel under ERISA."). The elements of an equitable estoppel claim under ERISA are "(1) material representation, (2) reliance and (3) damage." *Lee,* 991 F.2d at 1009. Similarly, the elements of a promissory estoppel claim under ERISA are " '(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced.' " *Aramony v. United Way Replacement Benefit Plan,* 191 F.3d 140, 151 (2d Cir.1999) (quoting *Schonholz,* 87 F.3d at 79). Moreover, to prevail on a claim of either equitable or promissory estoppel in the ERISA context, the plaintiff must prove the existence of "extraordinary circumstances." *Id.* ("In order to lessen the danger that commonplace communications from employer to employee will routinely be claimed to give rise to employees' rights beyond those contained in formal benefit

---

**3.** Because Court holds that Plaintiff's ERISA claims survives, the Court will not rule on Plaintiff's second cause of action, for attorneys fees pursuant to 29 U.S.C. § 1132(g)(1), at this juncture.

plans, however, we have added that an ERISA plaintiff must adduce[ ] not only facts sufficient to support the four basic elements of promissory estoppel, but facts sufficient to [satisfy an] extraordinary circumstances requirement as well.") (citations and internal quotation marks omitted); *see also Schonholz,* 87 F.3d at 78; *Lee,* 991 F.2d at 1009.

■ Although the Second Circuit has yet to specifically define the term "extraordinary circumstance," it is clear that the requirement is not "satisfied unless the surrounding circumstances are indeed beyond the ordinary." *Aramony,* 191 F.3d at 152; *see also Devlin v. Transportation Communications Int'l Union,* 173 F.3d 94, 102 (2d Cir.1999) (stating that "extraordinary circumstances" requires a "remarkable consideration" such as the use of a promise of benefits to intentionally induce behavior on employee's part). In addition, ambiguity in a plan document as to whether or not benefits vest, or a promise on behalf of the employer that the benefit is included, is insufficient alone, or when viewed conjunctively, to establish extraordinary circumstances. *Aramony,* 191 F.3d at 152–53.

■ Here, there are no facts in the Complaint which support an allegation of extraordinary circumstances. Plaintiff alleges no more than a promise on Empire's behalf to provide the benefit and that Plaintiff relied on such a promise to his detriment. (Compl.¶¶ 27–28.) There is nothing in the Complaint to suggest, for example, that Empire made such a promise to induce Plaintiff to not obtain other life insurance. Accordingly, Empire's motion to dismiss Plaintiff's third cause of action for equitable estoppel is granted. Plaintiff, however, is granted thirty (30) days leave to replead his estoppel claim. *See Alie v. NYNEX Corp.,* 158 F.R.D. 239, 245 (E.D.N.Y.1994) ("Where the court grants a dismissal for failure to meet minimum pleading requirements, 'such dismissal should ordinarily be accompanied by leave to file an amended complaint.' ")

(quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)).

### IV. *Plaintiff's Claim for Breach of Contract is Dismissed*

■ Plaintiff's fourth cause of action asserts a claim for breach of contract based upon Empire's "many writings coupled with verbal as well as written representations [that] it was [Empire's] intentions to establish a nonterminable [sic] right to the life insurance benefit of plaintiff." (Compl.¶ 34.) The Complaint further alleges that Plaintiff was entitled to this benefit pursuant to the terms of the Plan. (*Id.* ¶¶ 35–36.)

Plaintiff's breach of contract claim mirrors the allegations set forth in the complaint filed by Plaintiff in state court, which complaint was then removed by Empire to the present forum. By Memorandum and Order dated May 19, 1999, the Court addressed Plaintiff's original pleading and held that Plaintiff's breach of contract claim was preempted by ERISA because the claim "related" to an employee welfare benefit plan. (May 19, 1999 Memorandum and Order at 6; *see also id.* at 4) (citing *Case v. Hospital of St. Raphael,* 38 F.Supp.2d 207, 208 (D.Conn.1999) ("Courts have consistently held that ERISA preempts state common law … claims such as breach of contract.").) Plaintiff has set forth no reason why this analysis is incorrect as applied here. Accordingly, Plaintiff's fourth cause of action, which is preempted by ERISA, is dismissed.

### CONCLUSION

For the reasons stated above, Defendant's motion to dismiss the Complaint is **GRANTED** in part and **DENIED** in part. Defendant's motion is **DENIED** with respect to the first and second causes of action and **GRANTED** as to the third and fourth causes of action.