Nancy MATTHEWS, Plaintiff,

v.

NEW YORK LIFE INSURANCE COMPANY, Al Magliano, Stephen Rosenberg and Dinesh Ahluwalia, Defendants.

No. 91 Civ. 2527(MEL).

United States District Court,
S.D. New York.

Jan. 17, 1992.

Newman & Okun, P.C., New York City (William A. Okun, of counsel), for plaintiff.

Parker Chapin Flattau & Klimpl, New York City (Peter M. Panken, Stacey B. Babson, of counsel), for defendant New York Life Ins. Co.

Morgan, Lewis & Bockius, New York City (George A. Stohner, Barbara M. Cummins, of counsel), for defendant Al Magliano.

Werner L. Loeb, New York City, for defendant Stephen Rosenberg.

Howard, Darby & Levin, New York City (Vivien B. Shelanski, of counsel), for defendant Dinesh Ahluwalia.

LASKER, District Judge.

This action arises out of an alleged incident of physical sexual harassment. According to plaintiff, on April 18, 1990, she was violently assaulted at her place of employment by a fellow-worker, Stephen Rosenberg. She sues (1) Rosenberg, (2) Dinesh Ahluwalia, her direct employer, (3) New York Life Insurance Company ("NYLIC"), the company for whom Ahluwalia and Rosenberg both work as insurance agents, and (4) Al Magliano, the NYLIC office manager of the office where the alleged attack occurred. The gravamen of plaintiff's claims against defendants NYLIC, Magliano and Ahluwalia, is not the attack itself but their conduct towards her following the incident. According to plaintiff, they attempted to suppress her complaints and then retaliated against her when she would not drop her complaints against defendant Rosenberg. Her termination by defendant Ahluwalia, her direct employer, just over three months after the alleged attack, was, according to plaintiff, compelled and participated in by NYLIC and the other defendants.

She charges the defendants with creating a sexually hostile environment, committing *quid pro quo* sexual harassment and retaliatory sex discrimination, all in violation of Title VII of the Civil Rights Act, as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq.;* the New York Human Rights Law ("HRL"), N.Y.Exec.Law § 290, *et seq.;* the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq;* and various state common law torts. Defendants move to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and, consequently, to dismiss the pendent state law claims. Defendant NYLIC also moves for summary judgment on the tenth cause of action, the ERISA claim, contending that no genuine questions of material fact exist and that, in any case, the claim is moot.

NYLIC's motion for summary judgment on the ERISA claim is denied. Defendants' motion to dismiss the Title VII claim pursuant to Rule 12(b)(1) is also denied. Decision on the pendent claims is reserved pending a trial on the jurisdictional issues.

I.

These motions raise important questions as to the reach of Title VII, the federal anti-discrimination law targeted at workplace discrimination. NYLIC is a nationwide insurer with offices and places of business throughout the United States. It employs hundreds of insurance agents and in the case of defendants Ahluwalia and Rosenberg, provides them with office space rent-free, training courses, an allowance for office supplies and secretarial help, and medical insurance. Nevertheless, it is agreed that the relationship of these insurance agents to NYLIC is legally that of independent contractors, not of employees. The significance of their legal status for purposes of this motion is that it may render NYLIC immune to Title VII claims brought by its insurance agents and employees of its agents.

Defendants Ahluwalia and Rosenberg work out of offices in the Vanderbilt General Office, a sales office maintained by NYLIC in Manhattan on three floors of a building located at 660 Madison Avenue, New York, New York 10021 ("Vanderbilt Office"). Approximately 150 to 200 persons work at the Vanderbilt Office, including officials and employees of NYLIC, its sales agents and employees of its sales agents. Plaintiff worked for defendant Ahluwalia, bookkeeping, soliciting leads,

writing correspondence, and scheduling appointments; she worked out of his office. Defendant Ahluwalia hired plaintiff, paid her salary, set her schedule, and evaluated her performance. There is no dispute that he was plaintiff's sole direct employer.

Magliano is the general manager of the Vanderbilt Office, in charge of the operations of that office for NYLIC. According to plaintiff, his responsibilities include the hiring of NYLIC sales agents who work out of the Vanderbilt Office, the monitoring of their sales, and the assigning and reassigning of their office spaces.

The complaint alleges that, in the early evening of April 18, 1990, defendant Rosenberg, apparently drunk, emerged from his office, went into defendant Ahluwalia's office, which adjoins his, where plaintiff was working, grabbed her, and violently sexually assaulted her, not stopping until two of the persons present pulled him off of her. The complaint further alleges that for about an hour, both before and after the attack, Rosenberg yelled vulgar and explicit sexual remarks to plaintiff from his office, *inter alia*, asking plaintiff to come into his office and perform various sex acts with him.

According to plaintiff, following the attack, her demands for corrective action and her requests to have defendant Rosenberg's office relocated were ignored, and the defendants engaged in a concerted campaign to defame and slander her in order to force her to drop her complaints—spreading rumors that she was a liar and a thief. Plaintiff asserts that this conduct culminated on July 18, 1990, when Rosenberg and Magliano prepared and circulated a petition throughout the Vanderbilt Office accusing plaintiff of theft and asking that she be fired for such dishonesty. Less than a week later, on July 24, 1990—approximately three months after the alleged assault—plaintiff was discharged by Ahluwalia. Plaintiff claims that NYLIC coerced Ahluwalia into firing her by threatening him with loss of his office and office privileges in the Vanderbilt Office.[1]

## II.

Defendants move to dismiss for lack of subject matter jurisdiction on the grounds that plaintiff's Title VII claim is defective because (1) she failed to make a proper filing with the EEOC, and (2) she was not an employee of any of the defendants within the meaning of the Act.

Defendants argue that plaintiff's Title VII claim is defective because plaintiff failed to "submit to state jurisdiction," as is required, prior to filing her Title VII action. A prerequisite to filing a Title VII action is to file a charge with the EEOC. The Supreme Court has held that the procedural requirement of giving state agencies the first opportunity to resolve discrimination claims is met where the EEOC, acting on behalf of the complainant, refers such charge to the appropriate state agency, and then, in order to allow the state agency the first opportunity to resolve the dispute, defers its own proceedings until the earlier of sixty days after the state agency receives the charge or termination of the state proceedings. *See New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 64, 100 S.Ct. 2024, 2031, 64 L.Ed.2d 723 (1980); *Love v. Pullman Co.*, 404 U.S. 522, 525, 92 S.Ct. 616, 618, 30 L.Ed.2d 679 (1972).[2]

In this case, all of these events occurred. Plaintiff filed a charge of discrimination with the EEOC on October 12, 1990. The EEOC referred the charge to the SDHR on October 29, 1990, and received back from the SDHR its Form 212, the form utilized by the SDHR to waive state agency action on the charge, thereafter. On December 28, 1990, after the expiration of the sixty day period, the SDHR advised plaintiff it had received her charge and would close its file administratively based upon the EEOC

---

1. In an affidavit, plaintiff also asserts that NYLIC "could have" threatened to terminate Ahluwalia's own employment. It is true that under the Agent's Contract between NYLIC and Ahluwalia, NYLIC has the right to terminate insurance agents "without cause" at any time upon thirty days written notice, but the complaint does not even include such an allegation.

2. A separate filing with the SDHR is thus not required to effect an EEOC filing, as defendants suggest.

determination unless she notified the SDHR that she desired to utilize the SDHR's administrative procedures.

■ The defendants contend, however, that plaintiff refused to "submit to state jurisdiction" thus derailing the EEOC filing process, when plaintiff's counsel stated the following in a letter to the EEOC dated October 3, 1990:

> Accordingly, only the EEOC is to assert jurisdiction over this charge. Under no circumstances is the EEOC to defer this charge to the jurisdiction of the SDHR, or allow the SDHR to assert, or attempt to assert, jurisdiction over this matter. I am aware that pursuant to Section 706(d) of Title VII, 42 U.S.C. Subsection 2000e–5(d), the EEOC must *refer* the charge to the SDHR. In doing so, however, the EEOC is to retain jurisdiction, and the SDHR is to *immediately* waive the normal 60–day referral period, dismiss the charge for "administrative convenience" if necessary, and *forthwith* return the charge to the EEOC for investigation and processing.

(Letter dated October 3, 1990, from plaintiff's counsel to the EEOC).[3]

Under Title VII the appropriate state agency must be afforded a *bona fide* first opportunity to act upon a claim over which it has jurisdiction, before a claimant may maintain an action in federal court. *New York Gaslight*, 447 U.S. at 63–65, 100 S.Ct. at 2030–2031. The referral to the state agency is not simply a token gesture—the state agency must be given the first opportunity to resolve the matter. Once a claimant files a charge with the EEOC, "submitting to state jurisdiction" is not at plain-

tiff's option. Thus, the plaintiff's counsel's "instruction" to the EEOC was simply of no legal significance. The dictate of Title VII is that state agencies be given an opportunity to resolve plaintiff's charge before a federal action is filed. Thus when the EEOC "refers" the charge to the SDHR, the SDHR *automatically* assumes jurisdiction.

In fact, it appears that the SDHR took jurisdiction over plaintiff's charge and continued to retain jurisdiction until July 8, 1991. On July 3, 1991, plaintiff's counsel advised the SDHR that plaintiff had instituted suit in federal court on both her Title VII and state law discrimination claims, and requested that the SDHR "dismiss the charge for 'administrative convenience' on the grounds that the processing of the charge by the SDHR would not advance the State's Human Rights goals." On July 8, 1991, the SDHR issued an "Administrative Convenience Dismissal." Without any evidence to the contrary, there is no reason to conclude that the EEOC and SDHR did not fulfill their statutory duties, ignoring plaintiff's counsel's "instructions," evaluating the charge and reaching an independent determination not to pursue an investigation.

Defendants argue that where a plaintiff affirmatively chooses not to pursue state or local proceedings, *even* if the EEOC issues a Notice of Right to Sue, and *even* if the EEOC refers the discrimination charge to a state or local agency, the procedural requirements of Title VII may not be met, citing *Albano v. General Adjustment Bureau, Inc.*, 478 F.Supp. 1209, 1213–1214

---

**3.** By this letter, plaintiff's counsel was attempting to negotiate a procedural minefield created by a 1989 New York state court decision which held that plaintiffs in discrimination suits in the State of New York could pursue Title VII claims *or* pursue state statutory and common law claims; they could not pursue both. *Scott v. Carter–Wallace*, 147 A.D.2d 33, 541 N.Y.S.2d 780 (Sup.Ct.1989). In New York, a filing with the EEOC—a prerequisite to filing a Title VII action—automatically triggers a filing with the New York State Division of Human Rights ("SDHR"). The *Scott* court held that once an administrative proceeding had been instituted— even one "forced" by the filing of a federal

complaint with the EEOC—the claimant had "elected" the administrative route and, under state election of remedies doctrines, was foreclosed from asserting her claims in court. *Id.* Not only were state court actions precluded, the claims could also not be heard in federal court as pendent claims. *See Promisel v. First American Artificial Flowers, Inc.*, 943 F.2d 251 (2d Cir.1991). Since this lawsuit was filed, in the summer of 1991, the New York legislature amended the law to provide that an SDHR filing automatically triggered by a filing with the EEOC, does not constitute an "election of remedies."

(S.D.N.Y.1979), *aff'd,* 622 F.2d 572 (2d Cir. 1980). However, unlike *Albano* where plaintiff refused to cooperate when a city agency sought further information on a charge and requested an amended charge to be filed, in this case, the state agency never made any requests for information or asked for anything which the plaintiff refused to provide. The holding of *Albano* is that the state agency has the right to investigate a charge first *"if it so desire[s],"* Albano, 478 F.Supp. at 1214,—there is simply no basis for concluding in this case that the SDHR "so desired."

For these reasons, the defendants' motion to dismiss on the ground that the filing with the EEOC was not properly effected is denied.

### III.

■ Defendants also move to dismiss for lack of subject matter jurisdiction on the ground that the necessary employee/employer relationship as defined by Title VII does not exist between plaintiff and any of them. As a general rule, Title VII is applicable only to the claims of an employee (or prospective employee) seeking redress for the unlawful employment practices of her employer, *see, e.g., Tadros v. Coleman,* 717 F.Supp. 996, 1002 (S.D.N.Y.1989), *aff'd,* 898 F.2d 10 (2d Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 186, 112 L.Ed.2d 149 (1990). At first glance, none of the named defendants appears to qualify as a Title VII "employer." None of the defendants except Ahluwalia was ever plaintiff's direct employer, and Ahluwalia never had fifteen employees and thus cannot qualify as a Title VII employer.

■ However, it is the rule in this Circuit that, in appropriate circumstances, the absence of a direct employment relationship does not bar a Title VII claim:

> [I]t is generally recognized that the term "employer," as it is used in Title VII, is sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, regardless of whether that party may technically be described as an "employer" of an aggrieved individual as that

term has generally been defined at common law.

*Spirt v. Teachers Ins. & Annuity Ass'n,* 691 F.2d 1054, 1063 (2d Cir.1982) (citation omitted), *cert. denied,* 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984); *see also EEOC v. KDM School Bus Co.,* 612 F.Supp. 369 (S.D.N.Y.1985); *United States v. Yonkers,* 592 F.Supp. 570 (S.D.N.Y. 1984); *Amarnare v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 611 F.Supp. 344 (S.D.N.Y.1984), *aff'd,* 770 F.2d 157 (2d Cir.1985); *EEOC v. Sage Realty Corp.,* 87 F.R.D. 365 (S.D.N.Y.1980). "To permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer, while it could not do so with respect to employment in its own service, would be to condone continued use of the very criteria for employment that Congress has prohibited." *Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338, 1341 (D.C.Cir. 1973).

Plaintiff does not allege that an ordinary employment relationship existed between herself and defendant NYLIC, Magliano or Rosenberg, or that defendant Ahluwalia qualifies as a Title VII employer. Neither does she contend that NYLIC is responsible for the conduct of Ahluwalia towards his own employees. She argues rather that NYLIC "interfered with her employment opportunities" with defendant Ahluwalia—first, by creating a sexually hostile work environment, then by compelling Ahluwalia to terminate her—, and that the other defendants are liable as "agents" for allegedly participating in NYLIC's discriminatory conduct.

According to plaintiff, NYLIC interfered with her employment opportunities with defendant Ahluwalia by, *inter alia,* denying her access to the building where she engaged in work for defendant Ahluwalia, and instigating or coercing defendant Ahluwalia to terminate plaintiff's employment. Plaintiff contends that her discharge was "directly caused by, participated in, coerced and compelled by defendants Magliano and NYLIC" and "was acquiesced and partici-

pated in by defendants Ahluwalia and Rosenberg," Compl. ¶ 42, and asserts that:

On July 24, 1990, shortly after reporting to work, plaintiff was told by defendant Ahluwalia that he had been ordered by "the Home Office" to discharge her from her job, effective immediately. In the discussion that ensued between them, defendant Ahluwalia ... confirmed that the [petition accusing her of stealing] had been received at defendant NYLIC's home office, that plaintiff was not allowed to have keys or access to the Vanderbilt Office, and that if he did not get the keys back from plaintiff and discharge her at once, he would no longer be allowed to have his office in the Vanderbilt Office and would have to immediately move out. Defendant Ahluwalia then repeated to plaintiff that she was "fired", stating: "New York Life gives me the office and makes the rules."

Compl. ¶ 27.

Defendants assert that there is no precedent for recognizing an "interference with employment opportunities" on these facts and that the 2d Circuit cases cited by plaintiff are distinguishable because they involve either a delegation of duties or an employment agency situation, which is not the case here. However, the principle embodied in those cases—that is, of tracing responsibility—is precisely the issue to be determined here. As a general rule, independent contractors may not sue their employers for discrimination under Title VII. But cases like this depend on the facts. For example, where an employer exerts significant control over the working conditions of its independent contractors and their employees, where it controls their access to office space, their receipt of substantial allowances for office supplies and secretarial help, and their remedies for resolving workplace grievances—a power to interfere with employment opportunities may exist.[4]

In sum, in a case like this where the facts can only be partly conveyed by affidavits and motion practice and where the factfinder needs further information and testimony to interpret the significance of the facts, disposition by motion under Fed. R.Civ.P. 12(b)(1) is inappropriate. However, it does make sense to decide the jurisdictional issue first. Accordingly, the issues raised by the motion will be set down for separate trial prior to a trial of the merits which, of course, will not be necessary if it is ultimately determined that jurisdiction does not exist.

## IV.

■ Plaintiff contends that NYLIC (as insurer under the medical insurance policy purchased from NYLIC by insurance agents and employees of such agents) breached an alleged fiduciary duty to her and violated ERISA by interfering with plaintiff's continued medical insurance coverage following her discharge—deliberately misrouting and then refusing to accept checks which were necessary to continue her coverage under NYLIC's medical insurance policy after her discharge—all in retaliation against her for filing her EEOC charge. NYLIC moves for summary judgment on the ERISA claim on the grounds that plaintiff has not alleged that she submitted any claims for medical treatment that were denied during this period, and that, in any case, the claim is moot.

Although, on the material presented, one may have doubts whether plaintiff can prove her claims, summary judgment nevertheless cannot be granted because there are issues of fact relating to the allegedly deliberate misrouting and refusal to accept plaintiff's January 1991 premium payment and to the plaintiff's dentist's alleged refusal to perform dental services on her during the week of July 4, 1991, because of a conversation he had with the office manager of the Vanderbilt Office regarding her coverage. In addition, NYLIC's mootness argument also fails because the fact that NYLIC reassured plaintiff

---

**4.** The standard in such cases is high. For example, mere control of entry into a building where an individual engages in work, for example, would not be sufficient to establish interference with employment opportunities; plaintiff will need to establish NYLIC's actual participation in the decision to terminate plaintiff's employment.

that her medical coverage was continuing on May 30, 1991, does not render moot, her allegations of interference with her medical coverage *prior* to May 30, 1991.

\* \* \* \* \* \*

The motions for summary judgment are thus denied.

It is so ordered.