Marvin **GERZOG** and Eleanor Gerzog, Plaintiffs,

v.

**LONDON FOG CORPORATION** f/k/a **Londontown Holdings Corp., M.L. Offshore LBO Partnership No. B–VIII, Merrill Lynch Capital Appreciation Partnership, No. B–VIII L.P., Merrill Lynch. Capital Partners, Inc., "John Doe" and "Jane Doe" in their capacity as plan administrators and trustees and fiduciaries of the Pension/Retirement Plan of London Fog Corporation,** Defendants.

No. 95 CV 2350.

United States District Court, E.D. New York.

Nov. 18, 1995.

Finkel Goldstein Berzow & Rosenbloom by Harvey Goldstein, Kevin J. Nash, Richard M. Howard, New York City, for Plaintiffs.

Kaye, Scholer, Fierman, Hays & Handler by Peter A. Walker, Lori Bienstock, New York City, for the "London Fog" and "Doe" Defendants.

Orrick, Herrington & Sutcliffe by Stuart H. Bompey, Ira G. Rosenstein, New York City, for the "Merrill Lynch" Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

The plaintiffs Martin Gerzog ("Gerzog" or the "plaintiff"), and his wife Eleanor Gerzog ("Eleanor") brought this lawsuit alleging that Gerzog was unlawfully discharged from his job. Gerzog was an employee of twenty-six years with the defendant London Fog Corporation, formerly known as Londontown Holdings Corp. ("London Fog"). The essence of the Complaint is that after more than two decades of successful employment with London Fog, Gerzog was terminated because of his age in violation of federal, state and local laws, and he was informed that he would be receiving a reduced monthly pension based only on a portion of his actual salary, rather than his entire salary in violation of his Employer's benefit plan. In addition, Gerzog makes claims for accrued vacation pay and intentional infliction of emotional distress. Eleanor makes a related claim for loss of consortium.

The defendants now move to dismiss the Complaint in its entirety pursuant to Fed. R.Civ.P. 12(b)(6) arguing that Gerzog has failed to state a claim upon which relief can be granted. The plaintiffs respond that they have sufficiently alleged their claims, but in the alternative move to amend the Complaint should the defendants' motion be granted in whole or in part.

*Background*

Martin Gerzog and his wife, Eleanor, are residents of Nassau County in the state of New York. According to the Complaint, the defendant, London Fog, is a foreign corporation authorized to do business in the State of New York with offices located at 8 West 40th Street, New York, New York. M.L. Offshore LBO Partnership No. B–VII and Mer-

rill Lynch Capital Appreciation Partnership No. B–VII L.P. are partnerships, organized under the laws of the State of New York. Merrill Lynch Capital Partners, Inc. is a New York corporation, maintaining offices at 767 Fifth Avenue, New York, New York (collectively referred to as "Merrill Lynch"). The defendants John Doe and Jane Doe are named defendants in their official capacity as administrators, trustees, and/or fiduciaries of the London Fog Pension/Retirement Plan.

Marvin Gerzog began working for London-town Manufacturing Company, the predecessor in interest to London Fog Corporation in 1968 as Director of the London Fog's "Jeffrey Division," which sold off-price goods such as irregulars and otherwise distressed products. In 1969, Gerzog created a new division at London Fog entitled "Special Sales/Uniform and Airlines" ("Special Sales") which specialized in sales to Airlines and other uniform trades on a "quick response basis." Gerzog was made Director of this division, apparently from its inception. On October 12, 1988, Gerzog was named Vice President of London Fog responsible for both the Jeffrey and Special Sales Divisions.

Gerzog's compensation had two components. He received a fixed salary as Director of the Jeffrey Division and a fluctuating salary based on gross sales as Director of the Special Sales Division. According to the Complaint, Gerzog performed both of these jobs "in an exemplary fashion" and was "routinely complimented on his diligence, tenacity, vitality, business acumen and overall successful performance."

In 1991 Merrill Lynch became the controlling shareholder of London Fog and placed a number of people on London Fog's Board of Directors. Gerzog alleges that, upon information and belief, Merrill Lynch was "involved in the hiring and firing of all executive employees of London Fog" at all times relevant to this litigation.

In early 1994, Gerzog discovered that London Fog was replacing its older employees. Because he was 68 years old at the time, the plaintiff met with Douglas Hillman ("Hillman"), the Chief Operating Officer of London Fog, on May 3, 1994, to discuss his job security. Hillman informed the plaintiff that

he need not be concerned. Hillman further told Gerzog that he could either continue to work full time or reduce his work load without risking his continued employment. Gerzog replied that he would continue to work on a full time basis.

On June 29, 1994, Gerzog received a message from his secretary that he was required to attend a meeting the next morning at 9:00 a.m. in Maryland with David Adair, Vice President in charge of Marketing Administration. In anticipation of a meeting regarding marketing strategies, Gerzog stayed up late that night preparing business plans and projections for his divisions in spite of the fact that he would have to leave New York at 5:00 a.m. the next morning to reach Maryland by 9:00 a.m. However, when Gerzog arrived at the meeting on June 30, 1994, he found three executives already present, Hillman, Harvey Cohen, another divisional vice president, and Nancy Lynch, the Employee and/or Personnel Administrator of London Fog. To Gerzog's surprise, Hillman informed him that he was being terminated effective July 29, 1994. According to the plaintiff, he was also offered a severance package of $15,500 in return for which he was asked to sign a release no later than July 5, 1994. In addition, Gerzog was informed that he would be receiving a reduced pension based only on the fixed portion of his salary stemming from his employment as the Director of the Jeffrey Division, without any compensation for his service as Director of the Special Sales Division, and that he would not receive any accrued vacation pay. Gerzog further alleges, upon information and belief, that Merrill Lynch had "input and/or approv[ed]" these termination and benefits decisions. The plaintiff later discovered that his former responsibilities have been delegated to younger employees.

On July 5, 1994, prior to the plaintiff's last scheduled day of work, Gerzog injured his back aiding another employee replace a file drawer. Gerzog's injury was later diagnosed as a herniated disk which disabled him and prevented him from working. Since the time of his injury, Gerzog has been receiving disability benefits from London Fog.

On September 30, 1994, Gerzog filed a Charge of Discrimination with the New York State Division of Human Rights ("NYDHR"). The Charge was transferred to the Equal Employment Opportunity Commission ("EEOC") on October 6, 1994 which later issued to Gerzog a Right to Sue letter on March 22, 1995. Gerzog subsequently filed his Complaint in federal court on June 12, 1995. The Complaint contains nine causes of action against all the defendants as follows:

1. For violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.;*

2. For violations of the New York City Administrative Code, §§ 8–107(1)(a), 8–107(6) and 8–107(13);

3. For violations of the New York State Executive Law § 296 *et seq.;*

4. For violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.;*

5. For violations of New York Labor Law § 198–C;

6. For attorneys' fees;

7. For treble damages pursuant to ERISA;

8. For intentional infliction of emotional distress; and

9. For loss of consortium.

Counts one through three based on ADEA, the New York City Administrative Code and the New York State Executive law are based on the alleged age discrimination. Count four based on ERISA stems from the defendants' alleged refusal to pay Gerzog the pension benefits to which he is entitled. Count five arises from the defendants' refusal to pay the plaintiff accrued vacation pay. Count six seeking attorneys' fees is also based on the age discrimination and ERISA claims. Count seven for treble damages is based on ERISA. Count eight for intentional infliction of emotional distress is based on the defendants' "cold, calculated and premeditated" conduct, requiring Gerzog to travel to Maryland to be terminated. Count nine is based on the damages to Marvin and Eleanor Gerzog's marital relationship as a result of his discharge.

The defendants move to dismiss the Complaint in its entirety pursuant to Fed.R.Civ.P. 12(b)(6) arguing that the plaintiffs have failed to allege a claim for which relief can be granted. The plaintiffs respond that they have sufficiently stated their claims, but move in the alternative for leave to amend the Complaint in the event that the defendants' motion is granted.

*Discussion*

*1. Rule 12(b)(6) Standard*

A complaint will be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *accord Gagliardi v. Village of Pawling,* 18 F.3d 188, 191 (2d Cir.1994); *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). In addition, such a motion is addressed solely to the face of the pleading, and "[t]he court's function ... is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985).

In assessing the sufficiency of a pleading on a motion to dismiss, "all factual allegations in the complaint must be taken as true," *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991), and all reasonable inferences must be construed in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied sub nom., Soifer v. Bankers Trust Co.,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The Court is also mindful that under the modern rules of pleading, the plaintiff need only aver "a short and plain statement showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice." Fed.R.Civ.P. 8(f).

With these principles in mind, the Court turns to the facts set forth in the complaint.

## 2. *The age discrimination claims*

Gerzog makes three age discrimination claims under the ADEA, the New York City Administrative Code, and the New York State Executive Law. A plaintiff making a claim for age discrimination must first establish a *prima facie* case. *Cronin v. Aetna Life Insurance Co.,* 46 F.3d 196, 203 (2d Cir.1995), *citing, St. Mary's Honor Center v. Hicks,* —— U.S. ——, ———–———, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993) (applying the ADEA); *Camillo v. Coca–Cola Bottling Co.,* 776 F.Supp. 662, 664 (N.D.N.Y. 1991), *citing, Ashker v. International Business Machines,* 168 A.D.2d 724, 563 N.Y.S.2d 572 (3d Dept.1990); *Ioele v. Alden Press, Inc.,* 145 A.D.2d 29, 536 N.Y.S.2d 1000 (1st Dept.1989); *Mayer v. Manton Cork Corp.,* 126 A.D.2d 526, 510 N.Y.S.2d 649 (2d Dept. 1987) (applying New York executive law); *Eng v. Beth Israel Medical Center,* 1995 WL 469704 *6 (S.D.N.Y.1995) (recognizing that the federal standards applied to age discrimination under ADEA also apply to claims brought under the New York City Administrative Code § 8–107). To establish a *prima facie* case, Gerzog must show that (1) he was within the protected age group, (2) he was qualified for the position, (3) he was discharged, and (4) the discharge occurred under circumstances giving rise to an inference of discrimination. *Cronin,* 46 F.3d at 204; *Woroski v. Nashua Corp.,* 31 F.3d 105, 108 (2d Cir.1994). If the plaintiff establishes a *prima facie* case, the employer must offer a non discriminatory reason for the discharge. If the employer comes forward with such a reason, any presumption of discrimination created by the establishment of the *prima facie* case "drops out of the picture." *Cronin,* 46 F.3d at 203, *citing, Hicks,* —— U.S. at ——, 113 S.Ct. at 2749. The ultimate burden of persuasion remains with the plaintiff to establish: (1) that the asserted reasons for the discharge were not the true reasons, and (2) that the adverse employment decision was the result of unlawful discrimination. *See id.*

London Fog argues that Gerzog's ADEA claim should be dismissed first because the plaintiff was never terminated, and alternatively, even if he was terminated, he has suffered no damages. According to the defendants, Gerzog is out on a disability leave of absence receiving benefits as a result of the back injury he suffered on July 5, 1995 prior to his last scheduled day of work. Accordingly, London Fog contends that this leave of absence precludes any claim of age discrimination. The Court disagrees.

It is well settled in the Second Circuit that the date of termination for purposes of an age discrimination claim is the date "the employee receives a definite notice of the termination, not upon his discharge." *Miller v. International Telephone & Telegraph Corp.,* 755 F.2d 20, 23 (2d Cir.1985); *see also Economu v. Borg–Warner Corp.,* 829 F.2d 311, 315 (2d Cir.1987); *Shockley v. Vermont State Colleges,* 793 F.2d 478, 481 (2d Cir.1986) ("Generally, the timeliness of a discrimination claim is measured from the date the claimant receives notice of the alleged discriminatory act, not from the date the decision takes effect"); *Dillman v. Combustion Engineering, Inc.,* 784 F.2d 57, 59 (2d Cir.1986).

London Fog tries to distinguish this case law arguing that the notice of termination given to Gerzog was not final because Gerzog is presently on a disability leave of absence receiving benefits. In support of its argument, London Fog cites *Smith v. United Parcel Service of America, Inc.,* 65 F.3d 266 (2d Cir.1995); *Romano v. Rockwell International, Inc.,* 39 Cal.App.4th 140, 46 Cal. Rptr.2d 77 (2 Dist.1995); *Hoesterey v. City of Cathedral City,* 945 F.2d 317 (9th Cir.1991) and *Verschuuren v. Equitable Life Assurance Society,* 554 F.Supp. 1188 (S.D.N.Y. 1983). However, these cases are distinguishable.

In *Smith,* the Second Circuit was calculating the plaintiff's termination date in order to assess whether he was discharged before the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12101 *et seq.,* became effective. In reaching its decision, the court cited *Economu* and *Miller, supra,* reaffirming the Second Circuit rule that the statute of limitations begins to run when the employee receives unequivocal notice of his termination. *Smith,* 65 F.3d at 268. In rejecting the employer's position that the discharge predated the ADA, the court held that any pre

ADA notice was equivocal, advising the plaintiff only that he should "think about his future with the company," and that he "wasn't carrying his weight," not that he was actually discharged. *Id.* at 267, 268. These equivocal notices were insufficient to start the statute of limitations running under *Miller* and *Economu, supra.* In contrast, Gerzog was given unequivocal notice and a specific date of termination. Accordingly, *Smith* is inapposite.

In *Romano,* a California state court decision interpreting California state employment law, which is often more favorable to employees than federal or New York law, the plaintiff was told that one of his supervisors wanted him terminated in late 1988, the time the defendant-employer contends that the statute of limitations began running. However, subsequent to this time, the parties underwent a series of negotiations about allowing the plaintiff to continue working for several more years until he would be eligible for early retirement. It was not until June 5, 1991 that the plaintiff signed the retirement forms given to him by the defendant. Under this factual scenario, the California appellate court held that in light of "public policy" the statute of limitations ran from June 1991 and not December 1988. This case is distinguishable on its facts and the law.

In *Romano,* the plaintiff did not think he was being fired in 1988 as no specific termination date was given. Rather, the plaintiff appeared to be under the impression that he was in a battle over the conditions of his retirement, as is indicated by his refusal to sign several proposed retirement agreements. *Romano,* 39 Cal.App.4th at 145, 46 Cal.Rptr.2d at 80. Moreover, as *Romano* addresses California's discrimination statute, as opposed to the ADEA, and explicitly relies on California public policy, a policy not necessarily identical to the Congressional policy underlying the ADEA. Accordingly, *Romano* is also inapplicable.

In *Hoesterey,* the plaintiff was challenging the employer's "failure to provide the requisite [termination] procedure rather than the actual decision to terminate." *Hoesterey,* 945 F.2d at 320. Accordingly, the Ninth Circuit held that the date from which the statute of limitations began to run had to be the date the plaintiff realized that he would not receive any further "process" with respect to his discharge. In *Verschuuren,* the plaintiff's notice of termination provided that he would be dismissed only if the company was unable to place him in another position.

Unlike the case now before the Court, both *Hoesterey* and *Verschuuren* present situations where the plaintiff was unsure that he would ultimately lose his job. However, in this case, Gerzog was given unequivocal notice of his discharge, which is documented by a June 30, 1994 letter, clearly stating that he was terminated. There is no mention of a possibility of continued employment and Gerzog does not allege that some other right was violated subsequent to the discharge.

The fact that Gerzog is on a temporary disability leave is of no moment. Gerzog's leave of absence is not tantamount to finding that he is still employed. He is not employed because he was discharged by London Fog and he remains discharged. In its motion papers London Fog never states that it intends to take Gerzog back or place him in another position. Indeed, it is easy to envision a situation in which Gerzog filed this lawsuit after his injury healed, only to be faced with a motion to dismiss arguing correctly that his lawsuit was untimely because he was actually terminated at the June 30, 1994 Maryland meeting, not when he stopped receiving disability benefits.

■ London Fog also contends that Gerzog's age discrimination claims must be dismissed because he has not alleged damages. Again, the Court disagrees. The elements of a *prima facie* case are set forth above and do not require that a plaintiff establish his damages to survive a motion to dismiss. However, in this case, he may be able to show damages in back pay and emotional distress. Accordingly, reading the Complaint in the light most favorable to the plaintiff, the Court denies London Fog's motion to dismiss Gerzog's ADEA claim.

■ London Fog also argues that Gerzog's age discrimination claims under New York State Law and the New York City Administrative Code are barred by the New

York "election of remedies" doctrine. As London Fog correctly recognizes, the election of remedies doctrine bars the plaintiff from commencing a court action once a complaint is filed with the NYDHR and local commission on human rights. *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 257 (2d Cir.1991), *cert. denied*, 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992). Accordingly, a plaintiff may elect an administrative or judicial remedy, but not both. *Id.* Moreover, federal courts are precluded from maintaining supplemental jurisdiction over claims already filed with the State administrative agencies. *See Moodie v. Federal Reserve Bank of New York*, 58 F.3d 879 (2d Cir.1995).

■■■ London Fog originally argued that because Gerzog alleges that he filed his Complaint with both the State and Local Human Rights agencies, he is precluded from making the same claims in this Court. However, in his memorandum of law in opposition to the motion to dismiss, Gerzog further explains the allegations in the Complaint. According to the plaintiff, the Human Rights agencies were served with copies of the Complaint solely to meet the jurisdictional requirement for filing suit in this Court. At no time were actual charges of discrimination filed with either agency. In its reply brief, London Fog asks that the Court defer its decision on this issue until it can better ascertain whether the Gerzog filed charges with the relevant State and local agencies or merely served them with courtesy copies of the Complaint.

London Fog's request for a deferral is denied, as is its motion to dismiss on these grounds. This motion has been pending since the middle of September giving London Fog ample time to determine whether discrimination charges were filed with the State and local agencies. Accordingly, no further extension of time is warranted. With respect to the substantive claim, the Court agrees that the allegations contained in the Complaint are unclear as to whether they state that the plaintiff has filed charges with the State and local agencies, or whether they were merely served with courtesy copies of the Complaint. However, when reviewing a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to the plaintiff. Given Gerzog's explanation regarding his service of courtesy copies of the Complaint on the State and local Human Rights agencies, the Court finds that the plaintiff has sufficiently stated his claims for age discrimination under state and local law. Accordingly, London Fog's motion to dismiss counts two and three of the Complaint is denied.

In addition to the assertions above, Merrill Lynch offers two other arguments as to why the age discrimination claims should be dismissed. First, it contends that Gerzog is precluded from asserting his ADEA claim against Merrill Lynch because Merrill Lynch was never named in the original charge filed with the NYDHR. Second, Merrill Lynch contends that it was never Gerzog's "employer" for the purposes of an age discrimination analysis under federal, state or local law.

■■■ Generally, in order to proceed in federal court with an employment discrimination claim, a charge naming all the defendants must first be filed with the EEOC or appropriate state agency. However, an exception to this rule exists where a named defendant and an unnamed defendant share a sufficient "identity of interests." *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir.1991). To establish an "identity of interests" four factors must be satisfied:

(1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether, under the circumstances, interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 210–11. The only factual allegations in Complaint which demonstrate Merrill

Lynch's relationship to Gerzog's termination are that Merrill Lynch was, at the time of the discharge, London Fog's majority shareholder. Gerzog apparently concedes that he knew this at the time he filed his discrimination charge with the NYDHR. The Complaint alleges only in a conclusory fashion, upon information and belief, that Merrill Lynch had sufficient common interests with London Fog such that a successful EEOC conciliation would not require Merrill Lynch's participation. Further, Gerzog does not allege that Merrill Lynch ever represented to him that he could deal with Merrill Lynch through London Fog. Moreover, Gerzog's only communications were with counsel for London Fog, not Merrill Lynch.

■ However, even if Merrill Lynch's motion to dismiss was denied under the *Johnson* "identity of interests" exception, it would still be granted on the alternative ground that Gerzog has failed to sufficiently allege that Merrill Lynch was his employer under federal, state or local law. As stated above, the only factual allegation addressing Merrill Lynch's relationship with London Fog, is as a controlling shareholder. There are no allegations that would give rise to an inference of an alter ego or joint employer relationship. *See NLRB v. Solid Waste Services, Inc.*, 38 F.3d 93, 94 (2d Cir.1994) (discussing the factors to consider when applying the joint employer doctrine in a collective bargaining situation).

■ According to the cases cited by Gerzog, an individual may have more than one employer for the purposes of an employment discrimination analysis under federal law, where both parties significantly affect an individual's employment opportunities, *Matthews v. New York Insurance Co.*, 780 F.Supp. 1019, 1023 (S.D.N.Y.1992) (addressing Title VII claims), and where the third party takes discriminatory action against the employee, *Postema v. National League of Professional Baseball Clubs*, 799 F.Supp. 1475, 1482 (S.D.N.Y.1992), *rev'd on other grounds*, 998 F.2d 60 (2d Cir.1993) (addressing Title VII claims). An employee may have more than one employer under the New York State Executive Law and the New York City Administrative Code where: (1) the proposed employer has the power of selection and engagement over the employee, (2) the proposed employer made the payment of salary or wages to the employee, (3) the proposed employer had the power of dismissal over the employee, and the proposed employer had the power to control the employee's conduct. *Alie v. NYNEX Corp.*, 158 F.R.D. 239, 246 (E.D.N.Y.1994). The exercise of control over the employee's conduct and the incidents of his employment are the most important factors to consider when undertaking this analysis. *Id.*

Applying these factors, as they are cited by the plaintiff, the Court finds that Gerzog has failed to state a claim against Merrill Lynch under federal, state or local law. The only facts Gerzog has pled are that Merrill Lynch was the major shareholder of London Fog and that Merrill Lynch controlled London Fog's Board of Directors. The other references to Merrill Lynch are purely conclusory: that "London Fog's chief executive officer apparently met with Merrill Lynch virtually on a daily basis," and that Merrill Lynch had some type of "input" into London Fog's decision to discharge.

Conspicuously absent from the Complaint is a single factual reference to any conduct by or at the direction of Merrill Lynch. There is no reference to Merrill Lynch significantly affecting Gerzog's, or any other employee's employment, or engaging in any discriminatory conduct. There is also no mention of Merrill Lynch exercising any control over Gerzog's salary or the conditions of his employment. Accordingly, the age discrimination claims against Merrill Lynch under the ADEA, New York Executive Law and the New York City Administrative Code are dismissed.

### 3. *The ERISA claim*

London Fog also argues that Gerzog's ERISA claim for pension benefits should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). Gerzog alleges that his pension benefits should be calculated based on his total compensation as the Director of the Jeffrey Division, for which he was paid an annual salary, and as the Director of Specialty Sales, for which he was paid on the basis of gross sales.

London Fog responds that according to the terms of its retirement plan, Gerzog is entitled to pension benefits based only on one of his incomes and that they calculated his pension based on his annual salary as Director of the Jeffrey Division because that figure was the larger of the plaintiff's two salary components. Neither Gerzog, nor London Fog, cites any authority in support of their positions.

■ Although the pension plan, at issue is not attached to the complaint, as Merrill Lynch recognizes, the Court may consider a retirement plan on a motion to dismiss where the plan is incorporated in the complaint by reference. *See Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993). In analyzing the pension plan the Court is essentially provided with a question of contract interpretation. *See, e.g., Chicago Pneumatic Tool Co. v. Smith*, 890 F.Supp. 100, 130–31 (N.D.N.Y.1995) (finding that a suit for a declaratory judgment regarding the determination as to the amount of benefits is a question of contract interpretation).

According to London Fog, the company's Retirement Plan section 3.4 provides that an employee's "Accrued Benefits" are a function of credit earned. An employee earns credit for each month worked. The amount of the credit is calculated as a fraction of "Applicable Compensation." Section 1.4 defines Applicable Compensation "for each salaried employee" as the "annual base rate of pay as of the first day of the plan year." For a "wholesale salesman," Applicable Compensation is defined as "80% of his earnings."

Gerzog's compensation, as the Director of the Jeffrey and Special Sales Divisions was composed of a fixed yearly salary and percentage of sales. London Fog contends that the Retirement Plan classifies the plaintiff as a salaried employee, presumably because he is not a "wholesale salesman." In support of its position London Fog asserts that Gerzog participated in the company's Medical Expense Reimbursement Program which is only available to salaried employees. Further, Gerzog is presently receiving disability benefits based on his status as a salaried employee which are more extensive than those afforded commissioned employees.

Gerzog responds that his pension benefits should be calculated as a function of both components of his salary, as the Director of the Jeffrey *and* Special Sales Divisions as had always been done in the past. Gerzog supports his argument relying on section 3.5 of the Retirement Plan addressing an employee's maximum benefits.

■ ERISA governs two types of benefit plans: those providing for "pension" benefits and those providing for "welfare" benefits. *See* 29 U.S.C. § 1002(2). While the provisions governing welfare benefits allow employers a certain amount of flexibility, those governing pension plans are more stringent. *Reichelt v. Emhart Corp.*, 921 F.2d 425, 429 (2d Cir.1990), *citing,* S.Rep. No. 383, 93d Cong., 2d Sess. 18, *reprinted in,* 1974 U.S. Cong. & Admin.News 4639, 4890, 4904. Accordingly, ERISA prohibits the retroactive reduction of benefits accrued by participants in a retirement plan. *See* 29 U.S.C. § 1054(g); *Auwarter v. Donohue Paper Sales Corp. Defined Benefit Pension Plan*, 802 F.Supp. 830, 838 (E.D.N.Y.1992); *Amato v. Western Union International, Inc.*, 596 F.Supp. 963, 966 (S.D.N.Y.1984).

According to the Complaint, London Fog has refused to pay Gerzog the pension benefits to which he is entitled because he has not been given credit for his income earned as Director of Special Sales. London Fog claims that it has correctly computed Gerzog's benefits because under the presently operating retirement plan, Gerzog is only entitled to credit for his annual base salary as Director of the Jeffrey Division. London Fog further argues that the plaintiff has been given credit for his total salary up until 1989, when the terms of the pension plan were changed and the method for computing credit was modified.

■ Reading the allegations in the Complaint in the light most favorable to the plaintiff, Gerzog alleges that London Fog is denying him the pension benefits he is owed. Citing the provisions of the plan now in effect, London Fog argues that Gerzog has received all the benefits to which he is enti-

tled. However, from the limited facts presently before the Court it is not possible to resolve this mixed issue of law and fact. At this early stage in the litigation, the Court does not know the amount of benefits offered, how that figure was determined, how benefits were computed under the pre 1989 plan, why the amount offered is deficient, or whether the figure was the result of an unlawful reduction in benefits or some other reason. Accordingly, reading the allegations in the light most favorable to the plaintiff, London Fog's motion to dismiss the fourth claim based on ERISA, pursuant to Rule 12(b)(6) is denied.

■■■■ Merrill Lynch moves to dismiss Gerzog's ERISA claim for pension benefits because Gerzog has not alleged that Merrill Lynch qualifies as a plan fiduciary under ERISA. The ERISA statute imposes liability only on those who are plan fiduciaries, and a complaint failing to allege fiduciary status will be dismissed. *Adler v. Aztech Chas P. Young Co.*, 807 F.Supp. 1068, 1072 (S.D.N.Y. 1992), *citing,* 29 U.S.C. §§ 1002(21)(A) (defining fiduciary) and 1109 (imposing personal liability on fiduciaries) (dismissing complaint which does not contain allegations that defendants are plan fiduciaries). ERISA defines a person as a fiduciary where:

(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,

(ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has authority or responsibility to do so, or

(iii) he has any discretionary authority in the administration of such plan.

29 U.S.C. § 1002(21)(A). Moreover, the Supreme Court has recently held that non-fiduciaries cannot be held liable for money damages under ERISA. *Mertens v. Hewitt Associates,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).

■■■ The Court finds that Gerzog has failed to allege that Merrill Lynch is a plan fiduciary. The Complaint does not allege that Merrill Lynch exercised any discretion or control over the plan, rendered any investment advice, or exerted any influence over the administration of plan. The only allegations of exercise of discretion, are the conclusory references that "[u]pon information and belief, Merrill Lynch was aware of and approved ... the reduced and improper pension [benefits]." Such general allegations are insufficient to establish a valid claim. Accordingly, the plaintiff has failed to state cause of action under Rule 12(b)(6) and the fourth claim, the ERISA claim, against Merrill Lynch is dismissed.

Gerzog also argues in a footnote that even if he has not sufficiently alleged that Merrill Lynch is a fiduciary, that liability may still be premised on Merrill Lynch's involvement as a non fiduciary party which intentionally participated in breach of fiduciary duties. Gerzog attempts to distinguish *Mertens, supra,* on its facts, asserting that in that case, the Supreme Court was confronted with a third party, "apparently acting in good faith," who gave erroneous advice to the fiduciary, whereas here, the Court is confronted with a third party that intentionally caused the fiduciary to breach its duty. The Court declines to endorse this distinction.

■■ As the Supreme Court noted in *Mertens,* ERISA is a "comprehensive and reticulated statute" which specifically defines fiduciary liability, *id.* 508 U.S. at ——, 113 S.Ct. at 2066, *quoting, Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 361, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980), and the Court will not "attempt to adjust the balance between [the] competing goals that the text adopted by Congress has struck." *Id.* 508 U.S. at ——, 113 S.Ct. at 2072. Accordingly, this Court is unwilling to draw an artificial distinction between categories of non fiduciaries which might be liable under ERISA in the face of a Supreme Court decision denying liability of non fiduciaries for money damages entirely, and no legislative directive to the contrary.

Finally, the plaintiff makes one last alternative argument in an effort to hold Merrill Lynch in favor of some type of common law breach of fiduciary duty claim based London Fog's refusal to pay the plaintiff benefits

allegedly owed. The only support for this argument is a citation to *Mertens* where the Supreme Court analyzes an argument that breaches of ERISA duties by non fiduciaries should be considered "equitable" because similar claims are considered equitable under the common law of trusts. However, because the plaintiff makes no factual allegations supporting such a claim in his Complaint, the Court dismisses this argument without a determination as to whether such a claim would otherwise be valid.

#### 4. The New York labor law claims

The defendants argue that the plaintiff's claim for accrued vacation pay under New York Labor Law § 198–c should be dismissed, because the statute does not apply to professional employees such as Gerzog, earning over $600 a week.

■ Section 198–c of the New York Labor law states that the failure to provide wage supplements or benefits pursuant an employment agreement is a misdemeanor. Although there is some disagreement as to whether this section gives rise a civil claim for damages, *see Hammell v. Banque Paribas*, 780 F.Supp. 196, 200 (S.D.N.Y.1991) (collecting cases and finding that the better view is that the statute does not give rise to a civil cause of action), the Court need not now address this issue.

The statute explicitly provides that it "shall not apply to any person in a bona fide executive, administrative, or professional capacity whose earnings are in excess of six hundred dollars a week." New York Labor Law § 198–c(3). Since Gerzog was earning a base salary of $51,980 per year, and responsible for two company divisions, his position clearly is beyond the scope of section 198–c. Accordingly, the plaintiff's claim for accrued vacation pay as set forth in the fifth claim is dismissed.

#### 5. The claims for attorneys' fees and treble damages

In counts six and seven of the complaint, the plaintiff makes separate claims for attorneys' fees pursuant to the ADEA and ERISA, and for treble damages pursuant to

ERISA. The defendants argue that the plaintiff is not entitled to make separate claims for attorneys' fees or for punitive damages under ERISA. The plaintiff responds that it has no objections to filing an amended complaint "to avoid a situation of having a remedy framed as a separate claim for relief." Accordingly, the Court now dismisses the Complaint's sixth claim for attorneys' fees, and determines that dismissal of this claim does not preclude recovery of attorneys' fees to the extent they might otherwise be available as the result of the plaintiff's substantive allegations in the other claims.

■ However, the Court notes that the treble damages sought under ERISA in count seven of the Complaint are not available as a matter of law. *See Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 286 (2d Cir.1992) (holding that claims for breach of fiduciary duty will not support an award of punitive damages); *Schonholz v. Long Island Jewish Medical Center*, 858 F.Supp. 350, 354–55 (E.D.N.Y.1994) (collecting cases which that hold that punitive damages are unavailable for ERISA claims other than damages for breach of fiduciary duty). Accordingly, Gerzog's claim for treble damages is also dismissed.

#### 6. Intentional Infliction of Emotional Distress

The defendants also contend that Gerzog has failed to state a claim for intentional infliction of emotional distress. According to the Complaint, on June 29, 1994, Gerzog was informed by his secretary that David Adair, London Fog's Vice President of Marketing Administration, wanted Gerzog to be present at a 9:00 a.m. meeting the next day in Maryland. When Gerzog, presuming the meeting was about marketing strategy, inquired as to what materials he would need, he was told to bring whatever he wanted.

According to the Complaint, since the meeting was called on short notice, the defendants knew that Gerzog, being under the impression that he was attending a marketing meeting, would stay up late that night to prepare even though he had to leave at 5:00 a.m. in the morning to arrive in Maryland by

9:00 a.m. Nevertheless, when Gerzog arrived in Maryland on the morning of June 30, he was terminated.

The defendants argue that these facts are insufficient to allege a claim for intentional infliction of emotional distress.

In New York,

[t]o survive a motion to dismiss, [the] plaintiff's allegations must satisfy the rule set out in Restatement of Torts, Second, which [the New York Court of Appeals] adopted in *Fischer v. Maloney,* 43 N.Y.2d 553, 557, 402 N.Y.S.2d 991, 373 N.E.2d 1215 [ (1978) ]. . . . 'One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress. . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86, 90 (1983). The New York courts have been extremely strict in applying these principles. *Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir.1985) (holding that where the plaintiff alleged that she was polygraphed by her employer in connection with an investigation of stolen property solely because of her race, her claim failed to state a cause of action for intentional infliction of emotional distress). Moreover, the courts are wary of allowing plaintiffs to recharacterize their claims for wrongful or abusive discharge, both of which are not recognized in New York, as claims for intentional infliction of emotional distress. *Murphy,* 58 N.Y.2d at 303, 461 N.Y.S.2d at 236, 448 N.E.2d at 90; *Rich v. Coopervision, Inc.,* 198 A.D.2d 860, 604 N.Y.S.2d 429, 431 (4th Dept.1993). In 1993, the New York Court of Appeals noted that under these standards, every claim for intentional infliction of emotional distress that the court reviewed failed because the conduct alleged was not sufficiently outrageous. *Howell v. New York Post Co., Inc.,* 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699, 702 (1993).

Applying these rigid requirements, the courts regularly dismiss claims for intentional infliction of emotional distress which accompany routine age discrimination claims. *See Realmuto v. Yellow Freight System, Inc.,* 712 F.Supp. 287, 289 (E.D.N.Y.1989) (dismissing claim for intentional infliction of emotional distress where plaintiff alleged that he was improperly blamed for other employees' abuses because of his employer's discriminatory animus); *Murphy,* 58 N.Y.2d at 303, 461 N.Y.S.2d at 236, 448 N.E.2d at 90 (dismissing complaint alleging intentional infliction of emotional distress based on his discharge for reporting a fraud to the company, and that he was told that he would never advance because of his age, and that he was forcibly evicted from the workplace by the employer's guards); *see also Wanamaker v. Columbian Rope Co.,* 740 F.Supp. 127 (N.D.N.Y.1990).

In the rare instances where the New York courts have found the complaint sufficient to state a claim for intentional infliction of emotional distress in the employment context, the claims have been accompanied by allegations of sex discrimination, and more significantly, battery. *See O'Reilly v. Executone of Albany, Inc.,* 121 A.D.2d 772, 774, 503 N.Y.S.2d 185, 186 (3d Dept.1986); *Collins v. Willcox, Inc.,* 158 Misc.2d 54, 59, 600 N.Y.S.2d 884, 885–86 (Sup.Ct.N.Y.Cty.1992) (also recognizing that the conduct alleged occurred over an extended period of time); *see also Koster v. Chase Manhattan Bank, N.A.,* 609 F.Supp. 1191 (S.D.N.Y.1985) (sustaining a claim of intentional infliction of emotional distress apparently without an accompanying claim for battery where the complaint alleged that her employer forced her into an ongoing sexual relationship).

Applying the case law, the Court now finds that the plaintiff has failed to allege a claim for intentional infliction of emotional distress as a matter of law. In so finding, the Court now rules that even if defendants forced Gerzog to travel from New York to Maryland just to terminate him, this conduct does not rise to level of "outrageous" conduct required to establish such a cause of action as a matter of law. Rather, Gerzog has attempted to cloak a claim for "abusive

discharge," which, as stated above, is not recognized under New York law, in a form that the Court might be inclined to accept. As the New York Court of Appeals has already held, the courts may not allow such camouflage to render enforceable an otherwise invalid claim. *See Murphy*, 58 N.Y.2d at 303, 461 N.Y.S.2d at 236, 448 N.E.2d at 90. Accordingly, the plaintiff's claim for intentional infliction of emotional distress as set forth in the eighth claim is dismissed.

### 7. *The loss of consortium*

■■■■■ The defendants contend that the plaintiffs have failed to establish a valid claim for loss of consortium because the underlying substantive causes of action upon which this claim is based are invalid. The concept of loss of consortium includes both loss of support services and more ephemeral concepts such as love, companionship, affection, society, sexual relations, and solace. *Hassanein v. Avianca Airlines*, 872 F.Supp. 1183, 1190 (E.D.N.Y.1995). As the defendants correctly articulate in their memorandum of law, a claim for loss of consortium is a derivative claim which does not exist separate and apart from the injured spouse's claims. *Id.; Milam v. Herrlin*, 819 F.Supp. 295, 306 (S.D.N.Y.1993); *Perrin v. Hilton International, Inc.*, 797 F.Supp. 296, 302 (S.D.N.Y. 1992). Accordingly, where the injured spouse's underlying claims are dismissed, the claim for loss of consortium must similarly be dismissed. *See, e.g., Hassanein*, 872 F.Supp. at 1190 (granting summary judgment regarding claim for loss of consortium to the extent that the claim was based on the injured spouse's claims for emotional injuries which were also dismissed); *Milam*, 819 F.Supp. at 306 (dismissing claim for loss of consortium because the injured spouse's underlying claims were dismissed).

The Court has dismissed all the claims against Merrill Lynch and the claims against London Fog for accrued vacation benefits, attorneys' fees to the extent that they were raised as a separate cause of action, treble damages pursuant to ERISA, and intentional infliction of emotional distress. Accordingly, for Eleanor Gerzog to be able to maintain her claim for loss of consortium it must be viable against London Fog pursuant to the remaining age discrimination or ERISA claims.

■■■■ However, age discrimination claims will not support a spouse's claim for loss of consortium. *Reed v. Johnson Controls, Inc.*, 704 F.Supp. 170, 171–72 (E.D.Wis.1989) (wife cannot "base her claim for loss of consortium on the defendant's alleged violation of ADEA"); *see also Dugan v. Bell Telephone*, 876 F.Supp. 713, 728 (W.D.Pa.1994) (holding that age discrimination claims will not support of claim for loss of consortium under Pennsylvania law which requires loss of consortium to be based on negligent injury); *Reilly v. Prudential Property and Casualty Insurance Co.*, 653 F.Supp. 725, 733, 735 (D.N.J.1987) (granting summary judgment to defendant on spouse's loss of consortium claim where underlying "tort" claims were dismissed but ADEA claim remained); *Belanoff v. Grayson*, 98 A.D.2d 353, 471 N.Y.S.2d 91, 94 (1st Dept.1984) (holding that a discrimination claims brought pursuant to New York Executive Law will not support a claim for loss of consortium), *citing, Hart v. Sullivan*, 84 A.D.2d 865, 445 N.Y.S.2d 40, 41 (3d Dept. 1981), *aff'd*, 55 N.Y.2d 1011, 449 N.Y.S.2d 481, 434 N.E.2d 717 (1982).

■■■ Moreover, ERISA preempts a spouse's claims for loss of consortium. *See Nealy v. U.S. Healthcare HMO*, 844 F.Supp. 966, 974 (S.D.N.Y.1994); *Dearmas v. Av-Med, Inc.*, 814 F.Supp. 1103, 1107 (S.D.Fla. 1993); *Powell v. Bob Downes Chrysler–Plymouth, Inc.*, 763 F.Supp. 1023, 1029 (E.D.Mo.1991). Accordingly, since the remaining claims for age discrimination and ERISA violations will not provide a basis for Eleanor Gerzog's derivative cause of action, the loss of consortium claim is dismissed in its entirety.

### *Leave to Replead*

The plaintiffs have moved for leave to amend their complaint should any of the causes of action be dismissed. Rule 15(a) provides that "leave [to amend a pleading] shall be freely given when justice so requires." *See also Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir.1995); *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d

Cir.1993). Only "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [or] futility of the amendment" will serve to prevent an amendment prior to trial. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *accord Zahra,* 48 F.3d at 685; *Block,* 988 F.2d at 350.

 Leave to amend may be denied if the amendment would be futile. *Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *In Re American Express Co.,* 39 F.3d 395, 402 (2d Cir.1994); *John Hancock Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir.1994); *Ruffolo v. Oppenheimer & Co., Inc.,* 987 F.2d 129, 131 (2d Cir.1993). While the Courts are generally lenient in granting motions for leave to replead, granting the plaintiff's motion would be ineffectual and futile. There are no facts supporting any of Gerzog's claims against Merrill Lynch. Allowing Gerzog to rework his Complaint based on Merrill Lynch's equity interest in London Fog will do nothing but waste time and money only to have the Court grant a second motion pursuant to Rule 12(b)(6). Accordingly, Merrill Lynch's motion to dismiss is granted with prejudice, and leave to replead against Merrill Lynch is denied.

In addition, the claims against London Fog for accrued vacation benefits, attorneys' fees as a separate cause of action, treble damages under ERISA, intentional infliction of emotional distress and loss of consortium are dismissed with prejudice. The facts alleged in Complaint would not support these claims under any circumstances. The claim for attorneys' fees can be pressed in the other causes of action. Accordingly, leave to replead these causes of action against London Fog is denied.

*Conclusion*

After reviewing the submissions of all parties, and hearing oral argument, and for the reasons set forth above, it is hereby

ORDERED, that the defendant, Merrill Lynch's motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is granted with prejudice; it is further

ORDERED, that the defendant, London Fog's motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is granted with prejudice with respect to the claims for accrued vacation benefits, intentional infliction of emotional distress, attorneys' fees as a separate claim, treble damages under ERISA and loss of consortium; it is further

ORDERED, that the plaintiff is given leave for thirty days from the date of this Decision and Order to file an amended complaint with respect to accrued vacation pay under a common law theory of contract; and it is further

ORDERED, that the plaintiff's motion for leave to amend the Complaint is otherwise denied in all respects.

SO ORDERED.